## Peters v. Commonwealth.

(Decided September 18, 1913).

## Appeal from Madison Circuit Court.

Criminal Law—Intoxicating Liquors—Local Option Law—Violation—Evidence—Sufficiency.—On a prosecution for the offense of having in one's possession spirituous, vinous or malt liquors for the purpose of sale in local option territory, evidence examined and held sufficient to sustain a conviction.

JOHN C. CHENAULT and D. M. CHENAULT for appellant.

JAMES GARNETT, Attorney General, and O. S. HOGAN, Assistant Attorney General for appellee.

Opinion of the Court by William Rogers Clay, Com-
missioner—Affirming.

Appellant, Mike Peters, was arrested on a warrant
issued by the police judge of Richmond, charging him
with having in his possession in Richmond, Kentucky,
local option territory, whiskey for the purpose of selling
same.    On the trial in the police court the jury found
him guilty and fixed his punishment at a fine of $50 and
ten days in jail.  From that judgment he appealed to the
Madison Circuit Court.  The jury there found him guilty
and fixed his punishment at a fine of $100 and 50 days in
jail.  From the judgment entered on the verdict this ap-
peal is prosecuted.

The evidence heard at the trial is, in substance, as
follows:

J. H. Allman, an officer of the city of Richmond, tes-
tified that he had received information that Amos Wool-
rey had gotten off the train at Red House with some
whiskey.  He and two of his deputies went out the Red
House pike to the railroad crossing, a point within the
city limits of Richmond.  In a short time Peters and
Woolrey came along in a buggy.  He stopped them and
asked if they had any whiskey.  Peters said they had
none, but when they went to search the buggy Peters ad-
mitted they had whiskey.

J. D. Dykes testified that he was with Allman when
the arrest was made.  He heard Peters say he had no
whiskey, and heard Woolrey say "Yes, we have whis-
key."

It was admitted that Richmond was local option ter-
ritory.

Appellant, Peters, testified that on the 8th or 9th of
May he heard Amos Woolrey say he was going to Win-
chester.  Told him he wanted him to bring four quarts
of Old Elk.  He said he would not bring it to Richmond,
but that if witness would meet him at Red House he
would.  Witness gave him the money and went down to
Red House where Woolrey gave him the four quarts.
Witness got it for his own use and did not intend to sell
it.  Told Allman and Dykes he did not have any whiskey
for them.  He hired a horse and buggy and drove six
miles to meet Woolrey and get the four quarts of
whiskey.

Amos Woolrey testified that on May court day last
he saw his brother-in-law, who resided on Red Lick in
Madison County.  They agreed that he should go to his

brother-in-law's home for the purpose of going fishing. His brother-in-law asked him to bring something to drink, and he promised him to do so. His brother-in-law wanted a gallon for himself. Witness arranged to go to Winchester, and mentioned the fact in the business house of Peters. Peters asked him to bring four quarts of Old Elk. Told Peters he would not bring any whiskey to Richmond, but that if he would meet him at Red House he would bring it. Peters agreed to meet him. Witness went to Winchester and got for himself eight quarts of Old Tar and four quarts of Kentucky Pride. He bought for Mr. Peters four quarts of Old Elk. When he reached Red House he delivered the four quarts to Peters and got in the buggy with him. They were arrested as soon as they got in town. Witness did not expect to stop in town. He lived in the country east of Richmond. Peters agreed to carry him home in the vehicle in which he met him.

It is earnestly insisted that the foregoing evidence is wholly insufficient to sustain a conviction. In this connection it is argued that the defendant himself swears that he purchased the whiskey for his own use, and that there is not a single circumstance to show the contrary. The further point is made that the expense of the horse and buggy would more than offset any profit that he could have made on the whiskey. It must be remembered, however, that in determining the purpose of the defendant in a case like this the jury are not confined to his testimony alone, but have a right to take into consideration all the facts and circumstances surrounding the transaction. It must be admitted that defendant's companion purchased a quantity of whiskey far in excess of even the extraordinary demands of an exceedingly dry fisherman. He was not willing to deliver the four quarts to the defendant, but required the defendant to drive six miles in the country to get the whiskey, and to agree to carry him to his home out in the county. While it may be true that the legitimate profit on a sale of four quarts of whiskey would not have been greater than the hire of a horse and buggy, yet those engaged in "boot-legging" are not content with the ordinary profit, but frequently charge two and three prices for the whiskey which they sell. When we take into consideration the quantity of whiskey involved, the secrecy attending the transaction, the trouble and expense which the defendant was willing to undergo in order to secure

the whiskey, and the fact that when arrested he denied having the whiskey in his possession, we conclude that these circumstances are sufficient to justify the conclusion on the part of the jury that he had the whiskey in question in his possession for the purpose of sale in the city of Richmond.

There being sufficient evidence to sustain the verdict, and the instructions not being subject to complaint, it follows that the judgment should be affirmed, and it is so ordered.