
**Nimrod WEDDING, Jr., Appellant,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Jan. 29, 1965.

Rehearing Denied Oct. 22, 1965.

John Y. Brown, Lexington, for appellant.

Robert Matthews, Atty. Gen., George F. Rabe, Asst. Atty. Gen., G. Larry Tucker, Commonwealth Atty., Cynthiana, for appellee.

WILLIAMS, Judge.

This is an appeal from a judgment of the Harrison Circuit Court overruling appellant Nimrod Wedding, Jr.'s motion for relief under RCr 11.42.

Wedding was tried for murder in March 1961. The jury could not reach a verdict. A second trial in November 1961 resulted in conviction and the death sentence. On appeal to this Court an opinion was delivered affirming the judgment, whereupon the appellant petitioned for a rehearing.

Prior to submission on the petition for rehearing, this Court entered an order granting appellant permission to file a motion to vacate under RCr 11.42. The sole issue was whether Wedding had effective representation by counsel at his trial. Following a hearing on the question a special judge of the Harrison Circuit Court found that he did. We do not agree.

In Rice v. Davis, Ky., 366 S.W.2d 153 (1963), we noted that the right to assistance of counsel guaranteed by the 6th Amendment to the Constitution of the United States, as well as by Section 11 of the Constitution of Kentucky, means "effective assistance." We look then to the facts brought out at the hearing.

When the case was first set for trial Wedding did not have counsel and did not have sufficient means to employ counsel. The circuit judge thereupon appointed every lawyer of the Harrison County Bar, except one elderly gentleman and the public prosecutors. The "dean" of the appointed group acted as leader and conducted the trial. He stated that the cir-

cuit judge assured him that no Harrison County jury would give more than a life sentence, and he knew that such had been the habit in the past; consequently "we were lulled into the feeling that our duties were perfunctory and that as a result thereof none of the defense attorneys ever interrogated any of the prospective Commonwealth witnesses and each proceeded on the ancient adage that 'everybody's business is nobody's business,' and that as a further result, no single or united effort was made to prepare the defendant's defense; * * *" "* * * we proceeded in the second trial the same as we had in the first and interrogated no prospective witnesses, either for the defense or the Commonwealth, and that no single or united effort was made to prepare the defendant's defense on the second trial."

In Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527 (1932), the leading decision on the subject, the trial court appointed "all the members of the bar" to represent certain indigent defendants who were charged with rape. The Supreme Court commented as follows:

"* * * How many lawyers were members of the bar does not appear; but, in the very nature of things, whether many or few, they would not, thus collectively named, have been given that clear appreciation of responsibility or impressed with that individual sense of duty which should and naturally would accompany the appointment of a selected member of the bar, specifically named and assigned.

"* * * during perhaps the most critical period of the proceedings against these defendants, that is to say, from the time of their arraignment until the beginning of their trial, when consultation, thorough-going investigation and preparation were vitally important, the defendants did not have the aid of counsel in any real sense, although they were as much entitled to such aid during that period as at the trial itself."

█ We do not speculate on what the outcome might have been under different circumstances. In view of the fact that all of the available lawyers at the Bar were appointed and, by their own admission, none of them made any reasonable preparation for trial, we conclude that Wedding was denied effective assistance of counsel.

The judgment is reversed, with directions that the judgment rendered on the verdict of the jury made November 10, 1961, be vacated.

MONTGOMERY, PALMORE and STEWART, JJ., dissenting.

STEWART, Judge (dissenting).

I dissent from the opinion which holds appellant was not adequately represented at his trial in the case at bar.

Chief counsel for appellant at both trials was Mr. J. Thaxter Sims. Three other attorneys were appointed to represent appellant, namely, Messrs. Royce C. Pulliam, John Swinford, and Wayne Fitzgerald, all of Cynthiana. Mr. Sims has been a practicing lawyer since June, 1927, and has been in active practice in Cynthiana since 1933. Through the years he has tried criminal cases by appointment. He represented at least one defendant charged with murder in the 1950's (his co-counsel in that case being Mr. Wayne Fitzgerald, one of the associate counsel in this case). Mr. Sims was county attorney for Robertson County for three years from 1930 to 1933. He once ran for Commonwealth's Attorney in the district where this case was tried but was defeated. Unquestionably he considered himself competent for that position.

Mr. John M. Keith, who had been county attorney for Harrison County for twenty-two years at the time of the hearing on the motion, and a practicing lawyer in

Cynthiana since 1936, testified concerning the professional ability of Mr. Sims. He has observed Mr. Sims a number of times and the following statements are cited from his testimony:

"Q. 10 Have you formed an opinion as to his competency as a result of your observation of him?

"A. Definitely.

"Q. 11 What is your opinion, sir?

"A. Well, if you let me narrate a little bit, I had an argument the other day on who is the best criminal lawyer in Kentucky and the fellow I was arguing with said John Y. Brown and I said I'd just as soon have Thaxter Sims as my lawyer in a criminal case."

As to the final argument made by Mr. Sims in this case, Mr. Keith had this to say:

"Q. 15 Were you present during the summation he made in this case at the second trial?

"A. Yes, sir.

"Q. 16 As a lawyer would you give an opinion as to how the summation sounded to you?

"A. I have heard all kinds and I can't say I ever heard a better one, for what he had to go on."

In the light of the foregoing testimony, can it be said Mr. Sims was not adequately qualified to handle defendant's case? I believe his qualifications were fully established. However, the opinion's holding seems to be based upon the assumption that Mr. Sims was derelict in his duty in respect to the manner in which he conducted the defense. This view seems to be based upon the belief that he did not put forth his best efforts at the two trials, and, furthermore, that he did not undertake to prepare any defense.

Mr. Sims, testifying concerning his actions in this case, gave this reason for his decision not to cross-examine the Commonwealth's witnesses: "I just figured if I cross examined them it would maybe make their answers stronger and that's the pattern we followed." As to his professional attitude toward the case, he stated that he was not living in any fear of any consequences or of any criticism, but was only living in fear of what would happen to appellant. On this latter point he stated he was so concerned about the case that he had sleepless nights about the verdict.

Mr. Wayne Fitzgerald, another of the counsel appointed for appellant, has been a practicing lawyer in Cynthiana since 1950. He has participated by appointment in a great number of criminal cases prior to the trial of appellant. In respect to the preparation of the case, Mr. Fitzgerald's testimony was that he had knowledge of what all the witnesses would and did say. The testimony was the same at both trials and, as a result of the information he had prior to the trials, no testimony at either trial surprised him. Mr. Fitzgerald was present at all of the conferences which were held with appellant in Mr. Sims' office. Mr. Fitzgerald's recollection was that appellant was in the office of Mr. Sims on two or three occasions but that he made no statement on those occasions. As to the discussions in the presence of appellant, Mr. Fitzgerald's testimony was:

"Q. 29 Are you speaking of Mr. Sims or the defendant?

"A. I say the defendant.

"Q. 30 The case was discussed in his presence, was it not?

"A. On these occasions we didn't have a case. We were depending on him to assist us

and he was of no assistance whatsoever.

"Q. 31 After having him in your office you still didn't have a case?

"A. We were exactly where we were to start with."

Based on his experience and what he knew before and during the trial of appellant, Mr. Fitzgerald, knew of no defense in the case. There was no defense known to him at the time of the trial which he could have presented and did not present. We might add the opinion takes no account of the fact that Mr. Fitzgerald, along with Mr. Sims, represented appellant throughout his lengthy litigation. Also, no mention is made of Mr. Pulliam and Mr. Swinford, both of whom stayed in the case until the second trial was concluded; in fact, Mr. Swinford briefed this case on an appeal to this Court.

Sim Haggard, county jailer for Harrison County both at the time of the trial and at the time of the hearing on the motion, was the person in whose custody appellant was taken for interviews with his attorneys. He testified that he took appellant to the office of Mr. Sims "on four or five different occasions," all before the trial of appellant on November 8, 1961. On these occasions, Haggard would "stay sometimes two hours and a half and sometimes three hours." He waited in the lobby of the office while appellant was in conference with his attorneys.

The hearing at which the foregoing testimony was produced was begun and concluded before the Honorable Lloyd E. Rogers, as special judge, on August 8, 1964. The testimony we have alluded to stands uncontradicted. On August 26, 1964, Judge Rogers entered his findings of fact, conclusions of law, and final order overruling the motion to vacate the judgment. The findings of fact read as follows:

"J. Thaxter Sims, chief counsel for the defendant is too modest in his appraisal of his own ability as a lawyer, both in the fields of civil and criminal law, and mistaken in his opinion of the ability of all counsel associated with him in the trial of this case and there was no evidence adduced at the hearing to sustain the defendant's claim that he was denied effective representation of counsel as guaranteed by the Constitution of the United States."

In the present case, witnesses saw appellant run his car up over the curb, hit the decedent, back into the street, circle the block and return to the scene of the crime. Another witness at this location saw a man carrying a person on his back. The body of the decedent was later discovered two or three miles away, where it had been dropped from a railroad bridge near a place known as Wood's Crossing. The medical proof was to the effect that the decedent was alive at the time of the drop but died later from shock and exposure. Other evidence disclosed appellant had been at or near the decedent's liquor store during the day and evening in question and that, when arrested, he had in his possession the decedent's money and other incriminating property. Three witnesses testified appellant admitted the acts resulting in the victim's death. At the trial he neither testified nor introduced any witnesses in his behalf.

The circumstances of this case testify much more effectively than any of the witnesses ever could. Appellant's counsel were confronted with a case carefully prepared by the prosecution (and fairly prosecuted, we might add) as to which no meritorious defense could be presented. What remained to be done in this capital offense case? There was no choice of alternatives—a plea of mercy was the only course available. That course was most vigorously pursued, particularly by the

forceful argument made by Mr. Sims in his plea not to inflict the death penalty.

I am of the opinion appellant was ably represented at his trial by four competent counsel, headed by a most experienced and skillful practitioner. A hindsight attack on what were obviously deliberate trial tactics (and tactics, we might add, which leave no room for criticism, even at this late date) falls far short of demonstrating ineffective assistance of counsel. Those tactics were twice pursued. At the first trial, employing the same tactics, a hung jury resulted, and this goes to show that, at the second trial, the defense attorneys knew of the nature of the case and were well prepared. Under the circumstances, it does not seriously test the imagination to conceive that these same tactics would be used before a third jury, in the event of another trial. But one fair trial is all the law prescribes for any man. Appellant has had his.

In Rice v. Davis, Ky., 366 S.W.2d 153, 156, it was stated:

> "Effective representation by counsel, in order to satisfy the accused's constitutional right to a fair trial, is a rule of law that has been strictly construed. It must mean representation so lacking in competence that it becomes the duty of the court to observe such a condition and correct it. Allegations of serious mistakes on the part of an attorney, standing alone, even where harm results, are not a ground for habeas corpus. In all the cases decided on this subject, the circumstances surrounding the trial must be such as to shock the conscience of the court and make the proceeding a farce and a mockery of justice. See Diggs v. Welch, 80 U.S.App.D.C. 5, 148 F.2d 667."

I submit that appellant's trial which resulted in his conviction should be upheld when this test is applied to all the surrounding facts.

As this is a proceeding under RCr 11.42, and since the judgment is supported by relevant evidence of substance, I do not believe the judgment should be disturbed.

MONTGOMERY and PALMORE, JJ., join with me in this dissent.