Charles Burton SMITH, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

May 6, 1966.

Stuart L. Lyon, David Kaplan, Louisville, for appellant.

Robert Matthews, Atty. Gen., H. N. McTyeire, Asst. Atty. Gen., Frankfort, for appellee.

MONTGOMERY, Judge.

Charles Burton Smith was convicted of willful murder of Elizabeth Duncan and received a life sentence. On his appeal he urges that certain statements and a photo were wrongfully admitted into evidence.

Charles and his so-called common-law wife, Nancy Edna Phillips, went to the West End Sportsmen's Club on December 31, 1964, ostensibly to celebrate New Year's Eve. Their three small children were left at home in care of Elizabeth Duncan, an eighteen-year-old girl.

At approximately 10 p. m., appellant was driven to his home by Alford Alonzo Jackson. After having been in the house a short while appellant emerged and told Jackson to tell Nancy that he had driven appellant to the Bronze Lantern. Jackson next saw appellant near the West End Sportsmen's Club about 12:05 a. m. Appellant called Nancy aside and talked to her. She began crying and started walking home. At appellant's request Jackson took Nancy home. They found police officers there. The police were directed to appellant's whereabouts. He was arrested and returned to the scene of the crime. He was delivered into the hands of the officers to whom he later made a written statement. One of the officers testified that appellant volunteered information concerning the knife used in the homicide. The knife was found where appellant had said it was.

Nancy testified that the reason she cried was because appellant had said he thought he had "done something" and asked her for money with which to leave town.

The dead body of Elizabeth Duncan was found face down on the sidewalk across the street from appellant's home. The victim had on a black elbow-length sleeve sweater, stockings, and a garter belt. There was a ten-inch laceration on the right side of the body about two inches above the hip. A big part of the large intestine was protruding. The victim had been cut or stabbed ten times, the fatal blow being a stab wound in the heart. From around the body, in the gutter, across the street, on the fence, through the broken window, and through several rooms in appellant's residence there was a trail of blood, fatty tissue, parts of the intestine, and bowel matter. In the house near a couch a pair of stretch pants was found, turned inside out. On one leg was found some white panties rolled down in the same manner as the stretch pants, indicating, so an officer testified, that both articles had been removed at the same time. There were indications of a struggle in the room. A dress shirt, with the collar torn, and a T-shirt were found in the bathroom with blood and bowel matter smeared on them.

Appellant was arrested shortly after midnight. He was taken by officers to the police station after he had shown them where to find the knife he had used. About 2:25 a. m. he gave a written statement in which he admitted chasing the victim through the house with a knife and inflicting the wounds which caused the death of Elizabeth Duncan.

The statement signed by appellant contained the following prefatory and concluding parts:

"I, Charles Burton Smith, have been advised by this detective taking this statement that this statement can be used for or against me in a court of law. Also I have been asked if I have a lawyer, I do not have any lawyer, nor do I know who I will get to represent me in court."

\* \* \* \* \* \*

"I have given this statement of my own free will without threats or promises, and I have read this statement before signing same, and find that it is true to the best of my memory. I have also signed this statement. Again I have been advised that this can be used for or against me in a court of law. I have also been ad-

vised that Elizabeth has died, and that I am to be arrested for wilful murder."

The statement was taken by Officer Carl Corder. Detective James Bader was present part of the time. At a hearing in chambers held by the trial judge to determine the admissibility of the statement, Corder testified concerning the giving of the statement, including the warnings quoted. From the testimony so heard, the trial court found that the statement was admissible and competent as being voluntary. KRS 422.110(2). Appellant did not testify at the hearing in chambers or thereafter.

Appellant contends that a prior oral statement made to Bader was incompetent and the later written statement to Corder and Bader was also incompetent as flowing from the first statement. It is urged that the first statement was incompetent because appellant was intoxicated and was not informed of his constitutional right to remain silent.

It is true that appellant was not advised of his rights by Bader, whose uncontradicted statement of explanation follows:

"Here's the thing of it, when he was turned over to me the officers told me that he admitted the slaying. So I asked him—or me and my partner asked him what did he do with the knife and he volunteered the information as to where it was."

Bader said that appellant had been drinking but was sober.

Appellant relies on Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977. The only testimony concerning appellant's first statement comes from Detective Bader, who said that appellant had already admitted the slaying to other officers. There is no other testimony concerning the statement made to the other officers. The only information given by appellant to Bader was the location of the knife used.

In Escobedo it is necessary, in order to establish a violation of the Sixth Amendment, to show "the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent." There has been much misconstruction of Escobedo and a lot of misguided reliance thereon. It is not the answer in every case. From the testimony here, appellant must have freely admitted the killing when first arrested. At least the only testimony on this point is consistent with such interpretation. It is not to be understood under Escobedo that a murderer can voluntarily admit his guilt to an arresting officer and not have such admission used against him. In the light of the uncontroverted facts here, none of the Escodebo requirements has been shown. The statements made by appellant were properly admissible. Carson v. Commonwealth, Ky., 382 S.W.2d 85, cert. denied 380 U.S. 938, 85 S.Ct. 949, 13 L.Ed.2d 825; Hamilton v. Commonwealth, Ky., 401 S.W.2d 80 (decided March 25, 1966).

Appellant objected to the admission into evidence of a photo which showed the victim's half-naked body face down on the sidewalk where she fell. Blood stains were on the sidewalk. It is urged that the photo had no probative value and served only to inflame and prejudice the jury. A short answer to this contention is that the testimony of this case, as detailed above, shows such a savage and revolting murder that the photo could not have been prejudicial. Under the facts of this case and in view of the fact that the appellant received only a life sentence instead of a death sentence, appellant cannot be said to have been prejudiced by the introduction of the photo. Coffey v. Commonwealth, Ky., 256 S.W.2d 379; Poe v. Commonwealth, Ky., 301 S.W. 2d 900.

Judgment affirmed.