Roy SALISBURY, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

June 30, 1967.

Burnis Martin, Prestonsburg, for appellant.

Robert Matthews, Atty. Gen., Charles W. Runyan, Asst. Atty. Gen., Frankfort, for appellee.

OSBORNE, Judge.

The appellant was convicted of wilful murder and sentenced to death by the Floyd Circuit Court. This appeal is from the conviction. The facts surrounding the offense are as follows:

On April 23, 1964, near the village of Drift in Floyd County, Mallie Denny, Roy Denny, and Thomas Spencer Combs were in the process of marking a boundary line between property belonging to the Denny family and the Salisbury family. The line was being marked pursuant to an order of the Floyd Circuit Court and by personal direction of the judge of that court. They were working only a short distance from the Salisbury home. Sometime on the morning of the 23rd, Roy Salisbury along with his sister Darlene Martin and his father Tom Salisbury passed along the road near where the work was taking place. Some words were passed between the Salisburys and the Dennys. Exactly what these

words were is not made clear by this record. After the Salisbury family got to their home, according to a witness, C. B. Osborne, who was present and watched the entire transaction, Roy Salisbury returned to the spot where the line was being marked with a 12-gauge shotgun and, at close range, shot and killed all three of the people there engaged. The exact time of the shooting is not clear, however, the county officials were notified at their offices in Prestonsburg around six p. m. They immediately went to the scene and made an investigation. They found several shotgun shells upon the ground and talked with various witnesses who indicated that Roy Salisbury was the person who had done the shooting. The officials then proceeded to Roy Salisbury's home. Finding that he was not present, they talked with his father and his sister and obtained the shotgun with which the crime was alleged to have been committed. This shotgun was later sent to the state laboratory and, after tests, was definitely identified as the gun which fired the shells found at the scene of the slaying.

The appellant stood mute at his arraignment, and did not take the stand in his own defense. He now contends that the judgment should be reversed because of seven allegations of error.

1. He was indicted and tried for the slaying of Mallie Denny only and the trial court erred in allowing evidence relating to the killing of the other two persons at the scene.

2. The trial court erred in allowing introduction of photographs of the bodies of Roy Denny and Thomas S. Combs as they were found at the scene of the killing.

3. Error in permitting the county judge, Henry Stumbo, to testify as to what appellant's sister told him shortly after the shooting.

4. Error of the trial judge in advising the parties in chambers relative to conversation which had taken place between the judge and victims of the offense relative to the lawsuit concerning the line.

5. Error in failure of the trial court to give an instruction on voluntary manslaughter.

6. Error in sentencing the appellant to death as this is a violation of the Constitution of the United States and the Constitution of Kentucky.

7. Error committed in the selection and seating of a jury from Pike county.

We find that allegations one, four and six are without merit and therefore they will not be further discussed in this opinion. As to allegation two, which involves the introduction of the photographs in evidence, we believe the photographs were properly introduced. All three of these persons were slain in one swift, violent act. It would be impossible to try this case without permitting the evidence to encompass the total act. Everything done upon the scene at the time of the slaying is relevant and the fact that two other persons were involved cannot possibly be excluded or ignored. The photographs were competent, as a part of the res gestae. The rule prohibiting the exhibition of inflammatory evidence to a jury does not preclude the revelation of the true facts surrounding the commission of a crime when these facts are relevant and necessary. Were the rule otherwise, the state would be precluded from proving the commission of a crime that is by nature heinous and repulsive. If evidence is otherwise competent, the fact that it is heinous or repulsive will not make it incompetent. Where the photographs revealed nothing more than the scene of the crime and the persons of the victims, they were not incompetent, Smith v. Commonwealth, Ky., 402 S.W.2d 686, Howard v. Commonwealth, Ky., 395 S.W.2d 355.

Appellant's third allegation of error focuses upon a conversation between the county judge and appellant's sister, Darlene

Martin, shortly after the arrival of the county officials upon the scene.

 After inspecting the scene, officials went to the home of the appellant and talked with his father, Tom Salisbury, who was amazingly uninformed about the entire transaction. The officials then talked with appellant's sister about the death weapon. According to the testimony of Judge Stumbo, the following took place:

Q. 53 Did you question any other person there close to the scene?

A— We talked to his daughter. She came to the door pretty soon after we was talking to Tom there and Tom said he didn't know anything about it, that he had been out to the barn, and I turned to her and I said, "Do you know anything about this trouble out here or do you know about any guns—"

BY MR.
MARTIN: (Counsel for Defendant) "Objection as to this conversation."

BY THE
COURT: "Overruled as to this part of it."

BY MR.
BURCHETT:
"All right, go ahead."

" * * * And I said 'Do you know anything about where the gun is that was used out here'? And she said, 'Yes, my brother told me about it and showed me where he put it and said he had shot those people out there this evening.' "

BY MR.
MARTIN:
(Counsel for defendant) "Objection to what somebody else told her and move to set aside the swearing of the jury."

BY THE
COURT: "All right, overruled as to that."

These statements by the judge were patently hearsay and as such inadmissible, especially the statement that appellant had told his sister that he shot them. See Kinder v. Commonwealth, Ky., 306 S.W.2d 265, and Galloway v. Commonwealth, Ky., 374 S.W. 2d 835. If this testimony was prejudicial, then certainly the conviction must be set aside. The testimony is prejudicial if it affected the substantial rights of the accused and the test to be applied is what effect the error had or may reasonably be taken to have had upon the jury's finding. Echert v. United States, 8 Cir., 188 F.2d 336, 26 A.L.R.2d 752.

 The jury has found the defendant guilty under strong evidence. There was an eyewitness who, even though his credibility is questioned by the defense, stayed tenaciously by his story. The shotgun shells found at the scene were fired in appellant's gun. Appellant, when he surrendered himself to the jailer, stated that he was "The guy who got in a little trouble up at Drift." Even though several of the people who were in a position to know what happened at the time adopted the posture of the three monkeys, hear nothing, see nothing, say nothing, still the evidence is overwhelming that the appellant had to be the perpetrator of the crime. However, even though this be true, the appellant did nevertheless question the veracity of the eyewitness. We are unable to say what weight the jury gave Judge Stumbo's testimony and what effect it might have had in their decision to impose the death penalty. Being unable to say this hearsay evidence did not affect the sentence imposed by the jury, we must necessarily conclude it was prejudicial.

 Appellant's fifth contention is the trial court should have given an instruction on voluntary manslaughter. We do not believe the testimony in this case as the record presently stands is sufficient to justify such instruction. Therefore, we conclude that the trial court properly excluded it.

The seventh contention is that the trial court erred in the selection of a jury from Pike county. RCr 9.33 provides the judge of the trial court, if satisfied after having made a fair effort that it will be impracticable to obtain a jury free of bias in the county wherein the prosecution is pending, may require the sheriff to summon a sufficient number of qualified jurors from some adjoining county in which the judge shall believe there is the greatest probability of obtaining an impartial jury. This rule leaves it entirely within the discretion of the trial judge as to what adjoining county is to be selected. We find nothing in this record to indicate that the judge abused this discretion.

The judgment is reversed.

WILLIAMS, C. J., and MILLIKEN, PALMORE, and STEINFELD, JJ., concur.

MONTGOMERY, J., dissents.

HILL, J., not sitting.

MONTGOMERY, Judge (dissenting).

It has long been the law in this Commonwealth that a conviction will be set aside or a judgment reversed on appeal only for "any error or defect when, upon consideration of the whole case, the court is satisfied that the substantial rights of the defendant have been prejudiced." RCr 9.24, 9.26.

In Rutherford v. Commonwealth, 78 Ky. (1 Rodman) 639, 1 Ky.Law Rep. 410, it was held that the power of this court to reverse a conviction depends upon an affirmative showing by the defendant that an error appears on the record and that "the court must be satisfied, from consideration of the whole case, that the substantial rights of the accused have been prejudiced by the error complained of." In the Rutherford case the accused claimed that he had been denied the constitutional right to confrontation when he was not permitted to accompany the jury to view the place of the alleged killing.

In the instant case the court is reversing a death sentence conviction because of a hearsay statement concerning a fact which had been well proven by an eyewitness who said that he saw Roy Salisbury go to his home, return with his gun to the place where Mallie Denny, Roy Denny, and Thomas Spencer Combs were, and then saw the accused at close range shoot and kill them. This testimony was unimpeached and was fully corroborated by evidence concerning the identity of the shells found at the scene of the murders and of the gun, as well as was other testimony. There was no testimony to excuse or justify appellant's conduct.

The hearsay testimony upon which the judgment is being reversed is the testimony of the county judge who said that the sister of the accused, in response to an inquiry concerning the whereabouts of the gun, said: "Yes, my brother told me about it and showed me where he put it and said he had shot those people out there this evening."

Admittedly the statement was hearsay and it was error to admit it, but I cannot agree that it was prejudicial in view of the eyewitness testimony, unimpeached and corroborated. The accused has failed to show that his substantial rights have been prejudiced. The admission of the hearsay testimony was merely cumulative. The substance of the testimony had already been established beyond question. The rule of the Rutherford case was recently approved by this court on a similar question in McQueen v. Commonwealth, Ky., 393 S.W.2d 787. Under the facts of the case here the accused unquestionably committed three cold-blooded, deliberate murders. The death sentence was an appropriate punishment.

I am alarmed at the growing tendency of courts to reverse convictions such as this when the identity of the accused and his guilt have been established beyond ques-

tion. Wedding v. Commonwealth, Ky., 394 S.W.2d 105, was another case of unquestioned proof of a heinous murder in which this court, by a four to three decision, reversed in a death sentence case. Harris v. Commonwealth, Ky., 389 S.W.2d 907, and Ky., 411 S.W.2d 924, is another example. Harris was successful in obtaining two reversals, and recently he obtained a dismissal of the prosecution against him. The basis, in my humble opinion, was not meritorious for either reversal. I could not agree that Harris' substantial rights had been prejudiced. The tendency mentioned has a direct relationship to the increasing disregard for law and order and the resulting increase in the commission of crime. Prosecution without delay and sure punishment are the best deterrents to an increasing crime rate.

For these reasons I respectfully dissent.