**Robert Kenclare CALL, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

June 30, 1972.

Athol Lee Taylor, Thomas L. Waller, Taylor & Waller, Burlyn Pike, Norman Lemme, Pike & Lemme, C. V. Sanders, J. D. Buckman, Jr., Shepherdsville, for appellant.

Ed W. Hancock, Atty. Gen., John M. Famularo, Asst. Atty. Gen., Frankfort, for appellee.

EDWARD P. HILL, Judge.

This appeal is from a judgment of the Bullitt Circuit Court, entered after a jury trial, imposing the death penalty for the offense of wilful murder and a ten-year sentence for the offense of armed robbery.

On March 2, 1970, Paul Kidd, the victim, left Louisville via Preston Highway en route to Shepherdsville where he taught school. He was not heard from again until March 8, 1970, when his body was found in a barn near the Kentucky Turnpike by a small boy who lived nearby. Four .22 caliber bullets were removed from Kidd's body.

Three witnesses, Ollie Chelf, Raymond Reed and Gilbert Arnold, testified that on

the afternoon of March 2, 1970, they observed the appellant in a service station located on Preston Highway; that he left on foot a short time after 5 p. m. and was apparently hitchhiking south.

The appellant was located and apprehended in Florida a few weeks later in possession of the victim's automobile, overcoat, briefcase, wallet, credit cards, and other personal papers. The appellant's father testified that he found a .22 caliber pistol in the car and turned it over to FBI agents. The pistol was not introduced into evidence due to an illegal search and seizure. Also the appellant cashed a check by the victim's wife payable to the victim. The store which cashed the check took a photograph of the appellant and the check presented. The check involved contained what purported to be the signature of the victim and the signature of the appellant. The manager of the store where the check was cashed stated that Call appeared to be reluctant to endorse the check.

The appellant offered no proof, but his theory of defense, as brought out by cross-examination and closing argument, was that he bought Kidd's car from someone named Terry Russo in the west end of Louisville. The price was $200 and Russo threw in the overcoat, briefcase, wallet, credit cards, and other papers. It is unnecessary to review the evidence in more detail because no question is raised regarding the sufficiency of such.

Appellant presents the following arguments of reversible error. They will be discussed seriatim.

■ First the appellant argues that jurors were excused for cause in violation of Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776. The format on *voir dire* was as follows: "Do you feel like you have conscientious scruples about finding a person guilty, fixing their punishment at death under any case whatsoever?" A "yes" answer resulted in the prospective juror's being excused for cause. In Geary v. Commonwealth, Ky., (decided March 3, 1972), this court held that an essentially identical format was free of the error condemned in Witherspoon, supra, and related cases. We find no merit in this argument.

■ Next the appellant contends that the trial court erred in permitting the jury to remain unsworn overnight after acceptance by both sides.

■ The jurors were properly admonished and guarded and there is no allegation of any impropriety or irregularity. In the absence of such a showing the Rules of Criminal Procedure are satisfied by substantial compliance. See Leigh v. Commonwealth, Ky., 481 S.W.2d 75 (decided February 4, 1972), and Cosby v. Commonwealth, Ky., 451 S.W.2d 653 (1970).

■ The appellant also contends he was denied a fair trial because one of the jurors was guarded by the sheriff's wife who was not properly appointed a deputy sheriff as required by KRS 70.030. The irregularity in her qualification was that the county judge had not approved the appointment. She was a de facto officer. Furthermore, all attorneys for appellant agreed that the sheriff's wife be sworn to accompany the lady juror.

■ Next the appellant argues that the court erred in refusing to allow him to show the manner in which the jury was guarded. This is a matter within the sound discretion of the trial judge and will not be disturbed unless clearly in error. Smith v. Commonwealth, Ky., 366 S.W.2d 902 (1962). Since no suggestion of improper conduct appears in the record, the decision was a proper one. In Cosby v. Commonwealth, supra, this court said at page 654 of 451 S.W.2d:

"The gist of the matter is that absent some showing that a juror has been improperly approached, or that an opportunity for influencing a juror has occurred, substantial compliance with rules such as RCr 9.70 will suffice."

Therefore, since there is no hint of any improper action on the part of anyone, the trial judge cannot be said to have abused a sound discretion in overruling appellant's motion. Had an allegation been made which, if true, would affect the fairness of the trial or raised a suspicion of irregularity, then the failure to hold a hearing might have been reversible error, and the burden of proof in event of a hearing would have been upon the Commonwealth. Hudson v. Commonwealth, Ky., 449 S.W.2d 218.

■ Next the appellant claims error by the trial court in overruling his motion for a mistrial based upon interrogation of the witnesses. First he attacks the interrogation of Mr. Doer, an FBI agent. Appellant alleges that the county attorney, during Doer's examination, referred to "which murder" thereby informing the jury of another murder charge in Florida. A thorough search of the record, as appellee points out, reveals no such comment. However, the prosecutor did ask Doer "what murder" he was referring to. The question was objected to and the trial judge admonished the jury not to consider the remark.

■ The following excerpt comes from the direct testimony of the sheriff who brought the appellant back from Florida to stand trial:

"2 Now, on the trip back, did you have any conversation with the defendant Call, and if so, please tell what you stated to him and what he stated to you?

"A Yes. It was very little conversation, I'll put it that way, but somewhere as we were approximately half way up through Georgia, we had ridden for miles and miles, and no one had any conversation, so Mr. Spurrier was driving and I was on the opposite side in the front of the automobile. Mr. Call was in the back, and I turned around to Mr. Call and of course, I told Mr. Call, I said 'You were advised of your rights this morning when you left Florida,' I said 'I'm going to advise you again of your rights. I feel like you thoroughly understand everything' and he said 'I do.' And I did advise him of his rights again, I said 'Two or three questions just on my mind I would like an answer to.' I said 'Number 1, how do you feel about this situation that you're faced with up in Kentucky?' Mr. Call stated, he said 'Sheriff, I have no feeling about it one way or the other.' There was little more to that conversation. I don't think you would permit it. Would you like for me. . . .

"3 I don't know what it is. Go ahead and tell what he said whatever it is.

"A Well, Mr. Call stated, he said 'I have already been convicted in Florida and all I'm interested in is getting this thing over with, serve my time. I want to study' and I forget what he told me he wanted to do, some reading and 'I want to do some studying' and even made a remark what he wanted to be when he came out. I can't remember just what he said there. I then asked him, I said 'There are two further questions I would like to ask you . . . .'

"OEJECTION BY COUNSEL FOR DEFENDANT and move for a mistrial and that the jury be discharged.

"OJECTION AND MOTION OVER-RULED

"4 Go ahead.

"A I asked Mr. Call, I said 'There are two further question I would like to ask you.' He never said either way. I said 'Number 1, how did you manage to get into this automobile with Mr. Kidd?' And of course he never answered, and 'Number 2, in my mind there is only one way the man, Mr. Kidd could have gotten into this stall, and I would like to have that answered. Did you walk him into the stall under his own power?' He did not answer the question, but he stated, said 'Well, Sheriff, when this is all over someday, maybe I'll tell you.'

And that was the complete gist of our conversation concerning the incident out here. I asked him no further questions I expected no further answers and he made no statement to me other than that.

"THE COURT: Now, gentlemen of the jury, any reference to this man having been in prison cannot be considered as substantive evidence in this case, and statements that he made, that would only go to effect (sic) the credibility of his testimony, if it does so in your judgment. It cannot be considered otherwise."

We think that this evidence was admissible as substantive evidence. The fact that a part of the statement referred to the appellant's having been convicted of a crime in Florida was such a part of his statement as to be inseparable from it.

The admonition was harmless.

The next question involves comments by the Commonwealth's Attorney regarding a pistol and its exhibition before the jury during his opening statement. Counsel for the appellant previously had moved for a pretrial suppression hearing, and the trial judge had overruled that motion. This was a discretionary matter with the judge. Freeman v. Commonwealth, Ky., 425 S.W.2d 575.

When an attempt was made to introduce the gun into evidence, the trial judge then conducted an in-chambers hearing on its admissibility. As a result of this hearing, the gun was declared to be the fruit of an illegal search and seizure, and its introduction in evidence was not permitted.

The appellant was tried on the charge of wilful murder, and the evidence showed that the victim died of gunshot wounds. We believe that the actions on the part of the prosecuting attorney in his opening statement were not reversible error since it appears he acted in good faith, believing the gun to be admissible. Freeman v. Commonwealth, supra.

Finally, the appellant complains that the trial court erred in appointing all eligible members of the Bullitt County Bar to represent the appellant and relies on Wedding v. Commonwealth, Ky., 394 S.W. 2d 105 (1965), to support this proposition. The Wedding case involved an appeal in an RCr 11.42 proceeding in which the appellant alleged ineffective assistance of counsel. The court in reversing the judgment found that the record showed that there was ineffective assistance of counsel and that because all members of the Harrison County Bar had been appointed, everyone relied on everyone else to prepare a defense for the defendant. In Wedding, the chief defense counsel testified to substantial facts in support of the allegation of ineffective assistance of counsel. In the instant case, the record of the trial and on this appeal discloses that appellant has had the benefit of able, faithful, and loyal representation.

In conclusion, let it be said that while the evidence on the question of guilt is circumstantial, it is of such consistency and force as to exclude every hypothesis of appellant's innocence. It is clear and convincing. King v. Commonwealth, 143 Ky. 125, 136 S.W. 147; Peters v. Commonwealth, 154 Ky. 689, 159 S.W. 531; and Bowling v. Commonwealth, 193 Ky. 642, 237 S.W. 381. We find that appellant's trial was free of error and affirm the judgment.

All concur.