Oakley DAVIS, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

Supreme Court of Kentucky.

Sept. 16, 1977.

Harold G. Slone, Lexington, for appellant.

Robert F. Stephens, Atty. Gen., David M. Whalin, Asst. Atty. Gen., Frankfort, for appellee.

STERNBERG, Justice.

Appellant, 26 years of age, was indicted on May 25, 1976, by the Fayette County Grand Jury for first-degree robbery (KRS 515.020) and murder (KRS 507.020). Upon a jury trial in the Fayette Circuit Court, he was found guilty on both offenses and sentenced to 20 years' imprisonment for murder and 10 years' for robbery, said sentences to run consecutively.

As lifted from appellant's brief, the issues on this appeal are:

"I. Can the Commonwealth elicit testimony of statements allegedly made by appellant which inferred a disposition toward committing a criminal act, when the statements did not establish identity, guilty knowledge, intent or motive and the issue of appellant's character had not been placed in issue by appellant?

II. In the Commonwealth's chief case, is it permissible to impeach appellant by showing evidence that prior statements made out of court were inconsistent and contradictory without laying a proper foundation and without permitting appellant to confront the pre-trial statement on the witness stand?

III. When photographs showing bloody pictures establishing stipulated facts are presented into evidence, did the trial court err in admitting evidence which had less probative weight than prejudicial effect?"

On April 22, 1976, between 2:30 and 3:00 p. m., the Hanover Liquor Store was robbed and its clerk, Alan Rankin, was murdered. Rankin received a .25-caliber bullet wound to the left temporal region of his head and six slash wounds to the back of his neck. Three .25-caliber shell casings were found in a pool of blood where the deceased had fallen. The weapons were not recovered and there was no witness to the killing.

Commencing in February, 1976, the appellant shared an apartment with a female companion. This arrangement was upsetting to her parents and they were trying desperately to disrupt it and take their daughter home. However, appellant was able to persuade his concubine to stay with him and to resist the efforts of her parents. Shortly after this clandestine relationship started, appellant showed his companion a silver-colored automatic pistol. She expressed displeasure with the weapon and he put it away. The witness testified that on several occasions during the time they lived together the appellant talked of armed robberies. No specifics were mentioned, and she considered the statements were made in jest. She further testified that in April the appellant sold a brown revolver to Mr. Gilbert Coreman.

On the morning of April 22, 1976, the appellant, driving his companion's car, left the apartment for the avowed purpose of seeking work, but he returned between 10:30 and 11:00 a. m., without success. In the afternoon of the same day, and between 1:30 and 2:00 p. m., appellant left the apartment to go get some wine. His companion left to make a telephone call to her mother. About an hour later the appellant returned to the apartment carrying two paper bags, each containing a bottle of T. J. Swann wine. Soon thereafter, while appellant was changing his clothes preparatory to going to the beach at Boonesboro, Kentucky, he displayed a large amount of money, consisting of a $20 bill and many $1 bills. At about 3:30 p. m. the parties went to the beach, but after only about thirty minutes or so they returned to the apartment, where they stayed the rest of the evening.

Bernard Howard, a witness for the Commonwealth, testified that he and the appellant, sometime around Christmas 1975, went to a dump near Lexington, Kentucky, for target practice. They had two pistols, both belonging to appellant. He stated that one pistol was a .22-caliber revolver and the other a small gun, but he could not identify the caliber, except that it was a silver-colored automatic. On this occasion the witness, Howard, shot the .22-caliber pistol and the appellant shot the other gun. Howard directed the police officers to the target area, where nine .25-caliber shell casings were recovered by the officers. Later, they were identified as having been fired from the same gun which fired the three shots found at the scene of the robbery.

William Stewart testified that on the day of the murder and robbery, between 9:30 and 10:00 a. m., the appellant visited him at his home. While there the appellant showed him a .25-caliber automatic pistol, which he took from his hip pocket, and talked of needing money and of armed robberies. Stewart was not familiar with guns so appellant removed the ammunition clip.

The record reflects that in conversation before the trial judge and out of the hearing of the jury, the court was told that this witness, if permitted to do so, would testify that the appellant bragged that he had gotten away with robbing a grocery store in Louisville and with robbing the manager's apartment at the apartment complex where he lived. Counsel for appellant objected to the introduction of this testimony. The objection was sustained. The jury was not permitted to hear any of the testimony relating to the other two robberies. The court did permit the jury to receive the testimony of Stewart relative to the other conversation with appellant.

On the day of the commission of the offenses and between 2:00 and 2:30 p. m., Lucian Lynn and Andy Caudill had driven to the Hanover Liquor Store where they bought a six-pack of beer. The appellant was there at the same time, having arrived there just prior to their arrival. He bought a $1.47 bottle of wine. The cash register receipt numbers for these two sales were 150 and 149 respectively. The appellant drove east on Richmond Road, the same direction in which these witnesses were traveling. He preceded them for about five miles until he turned off at the Idle Hour Shopping Center, where they parted directions.

Gilbert Coreman testified that on the 13th or 14th of April, 1976, appellant accosted him about buying a pistol. An hour or so later Coreman went to the appellant's apartment and waited for appellant to bring the gun so that he could examine it. It was a .22-caliber white-handled revolver. The witness paid $20 for the weapon.

On the fateful day, at about 3:00 p. m., William Evans went to the liquor store to buy a six-pack of Pepsi and a bag of pork rinds. There was no clerk to wait on him, but in a very short time Linda Farley, another clerk, arrived and made the sale to him. The cash register receipt number on this sale was 157. Soon after making this sale, Clerk Farley discovered the deceased's body stuffed in the beer cooling room. The sale immediately preceding the one made by Clerk Farley to Mr. Evans (No. 157) was for a $1.47 bottle of wine and was register tape number 156. Cash register receipt numbers 149 and 156 were the only sales made that day for $1.47 bottles of wine. The police removed two bottles of the $1.47 wine from appellant's apartment and also a pair of blue jeans which he was wearing on the fateful day, April 22, which showed traces of lead in one of the pockets.

Appellant argues that so much of the testimony of his female companion and William Stewart, as relates to statements made by him with reference to armed robberies, was not admissible. He also charges that the trial judge erred in permitting so much of their conversations as relate to the day of the murder and robbery to go to the jury.

Counsel for appellant would have this court believe that the trial judge admitted testimony relating to appellant's having told of committing two prior armed robberies. This is not so. The court refused testimony about these criminal acts, but it did permit testimony that on the fateful day the appellant talked about armed robbery. As a matter of fact, the record reflects that the only prior criminal conduct of appellant that was brought to the attention of the jury was that he was convicted of knowingly receiving stolen property and sentenced to one year in prison. This was brought out on direct examination by counsel for appellant. Clearly, the admission of testimony that the appellant merely talked of armed robbery was not sufficient to either charge him or convict him of any crime. It is admissible, however, to show appellant's motive, intent, and design. This is the purpose for which the trial judge admitted it. In *Leigh v. Commonwealth,* Ky., 481 S.W.2d 75 (1972), this court said:

" * * * Evidence of existence of collateral facts may be admitted which tend to establish identity, motive, intent, or design. * * * "

Clearly, this evidence was admissible.

The appellant denied the robbery or the killing; denied that he ever had a .25-caliber automatic pistol which would work; de-

nied having any gun on the day in question; but admitted having a .22-caliber revolver and target practice at the time stated by the witness Bernard Howard. On direct examination he disclosed that he had a prior conviction for receiving stolen property; admitted having had a .38-caliber pistol, a .22-caliber revolver, and a .25-caliber automatic pistol which didn't work; and he attributed possession of the .38-caliber and .22-caliber pistols to Linda, one of his former live-in companions, who bought them for him. He said that someone left the .25-caliber automatic pistol in his apartment, that it did not have a clip, and that the trigger did not work. He further stated that unbeknownst to him, it disappeared from his apartment.

Appellant complains that the trial judge erred in permitting testimony which attempted to impeach his pretrial statements relative to owning a gun. We must bear in mind that the Commonwealth was not apprised of any defense which appellant was going to make, except that he did not rob or kill Alan Rankin. The testimony to which appellant refers is that of Officer Push. Counsel for appellant did not object to the introduction of the pretrial statements; his objection was to a portion of the substance of the statements. The statements were edited by the trial judge, with the assistance of counsel for both the Commonwealth and the appellant. As edited, counsel for appellant did not object to the introduction. Since no objection was made to the statements as edited and submitted to the jury, the propriety of their use has not been preserved for appellate review. *Taylor v. Commonwealth,* Ky., 545 S.W.2d 76 (1976); *Caslin v. Commonwealth,* Ky., 491 S.W.2d 832 (1973). The testimony was competent.

Alan Rankin was shot, slashed with a knife, and stuffed in a large beer cooling room. The Commonwealth was faced with the burden of proving every element of the offenses beyond a reasonable doubt. The weapons were never found and there was no eyewitness to the horrible deed. As a consequence, the guilt of the appellant, if proven at all, must be by circumstantial evidence relating to the commission of the crimes. The challenged portions of the pretrial statements are admissible if they are statements against interest, relate to the commission of the crimes, establish motive for the commission of the crimes, or establish possession of, use and familiarity with the sale of firearms. Although one statement or one act may not in and of itself establish the criminal offense or the motive for the commission of an offense, yet where a conglomerate of such statements or acts, when considered together, establishes a state of evidence from which an impartial jury might conclude guilt, then the separate acts are admissible. Regardless of the initial denial by appellant of his past or present ownership of a .25-caliber automatic weapon, his subsequent refreshed recollection on the subject, as set out in the pretrial statements, were relevant and admissible. The trial judge did not err in not excluding them.

The photographs about which complaint is made are those which, (1) show the bullet casings in the pool of blood; (2) show footprints in the blood, with a tape measure; (3) show blood near the door, with footprints; and (4) show the bloody face of the victim. Counsel for appellant contends that these photographs were in fact used to inflame and to induce the jury to find the appellant guilty. It is not contended that the severity of the sentences given to appellant was induced by the use of the photographs. It can hardly be thus contended, since the sentences were the minimum authorized by statute. The bullet casings shown in the photograph were fired from the gun owned by the appellant and used by him in target practice with Bernard Howard. As a matter of fact, any and all relevant evidence is admissible. Evidence is relevant if it tends to render a fact more or less probable then it would be without it. We reiterate what we said in *Deskins v. Commonwealth,* Ky., 512 S.W.2d 520 (1974):

"  *  *  *  In this advanced technological age of television, movies and the news media, those persons selected as jurors

are able to view a picture of the body of a victim of crime without prejudice to the defendant. * * *"

The court did not err in admitting the challenged photographs.

The judgment is affirmed.

All concur.