**William Alvin LEIGH, Appellant,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Feb. 4, 1972.

Rehearing Denied June 23, 1972.

W. H. Bixler, Covington, for appellant.

John B. Breckinridge, Atty. Gen., John C. Ryan, Sp. Asst. Atty. Gen., Frankfort, for appellee.

EDWARD P. HILL, Jr., Judge.

This appeal is from a judgment of the Kenton Circuit Court after a jury trial finding appellant guilty of wilful murder and imposing the death sentence.

In the evening hours of October 25, 1969, Charles Oelsner was shot and killed at his liquor store in Covington, Kentucky, during an attempted armed robbery by two

Negro men. There were two eyewitnesses present in the store, Mrs. Charles Oelsner and Mrs. Dorothy Deitz, who testified that the appellant, Leigh, fired the shot that killed Mr. Oelsner. In addition, Leigh's accomplice, Lovelace, testified that Leigh fired the fatal shot.

Mrs. Oelsner and Mrs. Deitz were transported to Dayton, Ohio, to view a line-up, in which appellee Leigh was included, on November 13, 1969, eighteen days after the shooting. Mrs. Deitz made a definite identification of the appellant, and Mrs. Oelsner made a tentative identification. Also present at the Dayton line-up was a Mr. Mitchell, who identified Leigh as the person who shot and wounded him while Leigh and Lovelace were attempting to rob the liquor store in which he worked in Cincinnati twenty minutes after Mr. Oelsner was killed. The bullet taken from Oelsner proved to be from the same gun that shot Mr. Mitchell.

Opon Leigh's arrest, he called his girl friend and told her to get rid of the gun he had given her to keep for him. Both Leigh and his girl friend testified as to this fact. Also, two of Leigh's acquaintances testified that Leigh told them he robbed a liquor store and shot a man who later died.

Appellant sets forth eight grounds for reversal. They will be discussed individually in the sequence in which they occurred at the trial.

■ The appellant moved for a change of venue on March 18, 1970, setting forth several grounds including the fact that the victim was well known; that a deputy sheriff was related to the victim; and that the public outrage was such as would prevent his receiving a fair trial in Kenton County. Accompanying this motion was an "affidavit" signed by counsel for appellant. This was not notarized.

The motion was overruled by the trial judge, relying on KRS 452.220(2). This statute requires that the petition be verified by the defendant and the filing of affidavits of at least two other credible persons. Because these requirements were not complied with, the motion properly was overruled. Also, there is nothing in the record to indicate that appellant's counsel sought permission of the court for time to comply with the statute.

■ On March 31, 1970, both sides had accepted eight jurors, and the court was adjourned until April 1, 1970. The eight jurors were sequestered; and when court reconvened to select the rest of the jurors, one of the eight stated to the court that he had subsequently recalled hearing an account of the incident and that he had already formed an opinion in the matter. The trial judge, after questioning the juror, excused him for cause. Counsel for appellant argues in his brief that the trial court was in error in not discharging the other seven jurors who had already been accepted by both sides. Counsel for appellant states that this was error as a matter of law but offers absolutely no authority to support his position. This court, in Pennington v. Commonwealth, Ky., 455 S.W.2d 530, 532 (1970), made the following comment upon the trial judge's discretion in such matters:

"* * * After jurors or prospective jurors in a capital case have been accepted and until the trial is over they are to be kept together and separate from outside influence, except as otherwise provided. This does not mean, however, that if one of them is for some reason eliminated after being sequestered with the others he must be regarded as having been an outsider. Until Mrs. Melton was released by the trial court she was just as much a juror or prospective juror as were the others. She had been accepted by both sides. The situation that developed thereafter was the same as if she had become ill, or had died, or had been excused for some other good cause. She did not become, retroactively, a 'stranger.'"

On the morning of April 2, 1970, before the complete jury had been selected and at the time the sequestered jurors were being brought to the courtroom, two of the jurors, Grace Auge and Alice Castleman, separated from the panel and Mrs. Aruge talked to her father in the courthouse hall. The duration of the conversation was a matter of seconds and the sheriff was in her company. The sheriff testified in an in-chambers hearing that Mrs. Aruge asked him if she could speak with her father, and he said: "Yes, but I will have to be there with you." He further testified that her father asked if she needed any money for meals, and she replied no, that her husband had sent her some money. This testimony was corroborated by the other juror, Mrs. Castleman.

The appellant does not allege that improper communications were involved but presumably asserts that *any* violation of sequestration is reversible error. The only authority cited by counsel for appellant is KRS 29.265, which states: "No officer, party to an action pending, or his attorney or attorneys shall, without leave of court, converse with the jury or any member thereof upon any subject after they have been sworn."

This statute is not an express prohibition against conversation with *all* individuals and is not, therefore, exactly in point. However, this conversation was a violation of the court's admonition given pursuant to RCr 9.70. The trial judge conducted an in-chambers hearing in which he determined that the breach of sequestration was not improper. This court has repeatedly held that any separation is to be avoided but has held that the trial judge has considerable discretion in this matter.

In Cosby v. Commonwealth, Ky., 451 S. W.2d 653, 654 (1970), the court said:

" * * * The gist of the matter is that absent some showing that a juror has been improperly approached, or that an opportunity for influencing a juror has occurred, substantial compliance with rules such as RCr 9.70 will suffice."

See also Woodford v. Commonwealth, Ky., 388 S.W.2d 371 (1965), which held that a conversation between a juror and a third person concerning an unrelated matter did not violate the rule.

Appellant's counsel urges that a mistrial should have been declared because jurors expressed scruples against imposing the death penalty. The reporter's trial memorandum shows that a lengthy *voir dire* was conducted, but we were not furnished with a record of *voir dire* which is necessary for review in order that the questions propounded, answers given, and objections may be noted by this court.

In the course of appellant's trial, the Commonwealth called as a witness a Mr. Richard Mitchell. Mr. Mitchell testified that the appellant and his accomplice, Lovelace, attempted to rob a liquor store in which he worked some 20 minutes after Mr. Oelsner was killed. Mitchell testified that Leigh was the only one with a gun and that Leigh shot him. The bullet passed through Mitchell, and was discovered by the police who confirmed by ballistics comparisons that the bullet was fired from the same gun used to kill Mr. Oelsner. Appellant's counsel objected to this testimony, and the trial judge overruled the objection after an in-chambers hearing.

Mitchell's testimony was clearly admissible under the exceptions to the collateral fact rule. Evidence of existence of collateral facts may be admitted which tend to establish identity, motive, intent, or design. Quarles v. Commonwealth, Ky., 245 S.W.2d 947 (1952), and Wigmore, Evidence, §§ 216, 300. This testimony would be admissible to show identity or design. Identity is shown from the comparison of the bullets taken from the two incidents. Design (sometimes referred to as common scheme or *modus operandi*) is also shown by the similarity of the two acts and the

close proximity in time. The trial court was correct in admitting Mitchell's testimony.

■ Appellant contends the line-up in which he appeared was unduly suggestive and therefore violated his constitutional rights under United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), and Bradley v. Commonwealth, Ky., 439 S.W. 2d 61 (1969).

The appellant argues his rights were violated because the two people on the ends were light-skinned Negroes and the other three were darked-skinned Negroes, and further that the only other light-skinned Negro was his father and therefore not in his general age group.

There is no allegation that the appellant was not represented by counsel at the line-up, and likewise this entire issue is not mentioned in his motion for a new trial. Commonwealth's Exhibits 3 and 4 on close scrutiny do not appear to support appellant's allegations that the line-up was unduly suggestive.

■ Appellant's counsel next alleges that reversible error was committed because the codefendant, Lovelace, bordered on perjury when he testified that no deals had been offered him. Once again appellant's counsel offers no authority to support this proposition, and we agree that there is none.

This point is completely without merit. This is a matter of credibility which may be and was attacked upon cross-examination. The jury's function is to believe or disbelieve the witness. In any event, there is nothing in the record tending to prove that Lovelace was offered a deal.

■ In any trial there is ever present the possibility that a witness may not be telling the truth. This is one of the purposes which necessitates the right to cross-examine the witness. The jury decides what testimony to believe, and the mere possibility that a witness did not tell the truth is not a ground for reversal.

■ Finally, counsel for appellant submits that the Commonwealth's attorney improperly argued the case in his closing argument. The portion appellant complains of is as follows: "But what assurance, in writing that word [life] on that verdict form, do you have that William Alvin Leigh may not escape from confinement? Just the other day we had three come into our community." This is the only statement appellant complains of in a closing argument that lasted approximately 45 minutes. As suggested in the appellee's brief, it certainly must not have shocked appellant's counsel because he failed to utter any objection.

The statement which was made did not relate to a matter in evidence, but, according to appellant's brief, to the occasion where three convicts escaped and fled through the area on some type of rampage. Appellant argues that the aforementioned statement led the jury to believe that unless the death penalty was imposed the appellant would return to prey on the community. We do not find this argument to contain anything inflammatory or prejudicial. In so holding, we do not approve this type of argument, which might well be prejudicial under other circumstances. No mention is made of any misconduct by the three escapees referred to in the presence of the jury.

The judgment is affirmed.

All concur.