Harry C. GALBREATH, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

March 16, 1973.

G. Anthony Mills, Dawson Springs, Robert E. Francis, Cadiz, for appellant.

Ed W. Hancock, Atty. Gen., Guy C. Shearer, Asst. Atty. Gen., Frankfort, Albert W. Spenard, Commonwealth Atty., Madisonville, for appellee.

GARDNER, Commissioner.

Harry C. Galbreath was convicted of armed robbery and murder and sentenced to death in the electric chair. The primary issues on this appeal are legal rather than factual so we shall not burden the opinion with an extensive elaboration of the facts.

According to witnesses for the Commonwealth, Galbreath entered the drugstore of Eugene and Aileen Williamson in Princeton, Kentucky, and committed robbery at gunpoint. A struggle ensued during which Eugene was shot three times. He died from the wounds inflicted. Galbreath fled in a red Camaro being driven by Lander W. Hollowell. Within a short time they were apprehended. Galbreath and Hollowell were indicted and tried jointly, Galbreath as principal and Hollowell as aider and abettor. Hollowell has taken a separate appeal, disposition of which may be found in Hollowell v. Commonwealth, Ky., 492 S.W.2d 884, this day decided.

Galbreath contends first that the trial court erred in denying his motion for a change of venue. He points out that he was a Negro in a predominantly white rural community. In his brief Galbreath reports that for fear of his life he requested, and the magistrate ordered, that the examining trial be held in the Eddyville State Penitentiary. He says that in the interest of safety the court ordered armed guards stationed in and near the courtroom at the arraignment. Appellant has failed to make appropriate page references to the record wherein these allegations are supported. See RCA 1.210(3)(b); Bryant v. Commonwealth, Ky., 467 S.W.2d 351 (1971); Taylor v. Commonwealth, 240 Ky. 450, 42 S.W.2d 689 (1931). Aside from this, a careful examination of the record discloses an absence of any evidence to substantiate Galbreath's broad allegations of denial of justice because of extreme adverse public opinion. There were no newspaper clippings or television or radio excerpts presented that would indicate inflamed or prejudicial reporting by the news media. Naturally the public was indignant upon receiving the reports of the happenings, but the record is devoid of any evidence of unfairness of trial. This case is a far cry from Estes v. Texas, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965), where television cameras were allowed in the courtroom, and Sheppard v. Maxwell, Warden, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966), where the "circus" atmosphere prevented any semblance of a fair trial. We do not believe the trial court abused its discretion in denying the change of venue. See Ohio River Sand Company v. Commonwealth, Ky., 467 S.W.2d 347 (1971).

Appellant's second assignment of error is the refusal of the trial court to discharge the jury panel because Negroes were systematically excluded from the panel. Appellant is black, the victims white. In his brief appellant reports that approximately 400 prospective jurors were called and only two (%10 of 1%) were Negro and

that Caldwell County had a population of 13,179 persons, of which 1,020 (7.7%) were Negro. Again appellant makes no reference to the record where the allegations are supported. Numerous times we have held that the presentation of extraneous matters in briefs is improper. See Rankin v. Blue Grass Boys Ranch, Inc., Ky., 469 S.W.2d 767 (1971). Because of the severity of the punishment, however, we have examined the record but do not find support for the allegations. Appellant has utterly failed to show a systematic exclusion of Negroes as was determined, for example, in Alexander v. Louisiana, 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972), relied on by appellant. There the court said: "This Court has never announced mathematical standards for the demonstration of 'systematic' exclusion of blacks but has, rather, emphasized that a factual inquiry is necessary in each case [that] takes into account all possible explanatory factors." There was no "factual inquiry" in the present case. After the jury had been accepted by both sides, appellant simply moved for a discharge of the jury on the ground of systematic exclusion of Negroes from the panel. He made no offer to demonstrate the basis for his allegation.

Appellant contends that the death penalty is violative of the Eighth Amendment to the United States Constitution which provides that "cruel and unusual punishments" shall not be inflicted. He seeks first a reversal of the case, and if that is not adjudged, he asks that the judgment be modified so as to eliminate the death penalty.

In view of Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), the judgment should be amended to reduce the sentence from death to life imprisonment. As so amended, it is affirmed.

PALMORE, C. J., and MILLIKEN, OSBORNE, REED, STEINFELD and STEPHENSON, JJ., sitting.

All concur.