**Jimmy Keith SELF, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Supreme Court of Kentucky.

March 11, 1977.

See Ky., 550 S.W.2d 511.

Jack Emory Farley, Public Defender, David E. Murrell, Deputy Public Defender, Timothy T. Riddell, Asst. Public Defender, Frankfort, for appellant.

Robert F. Stephens, Atty. Gen., William W. Pollard, Asst. Atty. Gen., Frankfort, for appellee.

STEPHENSON, Justice.

Jimmy Keith Self was convicted of the capital offense of murder during the course of robbery in the first degree. KRS 507.-020(2)(b). The jury in accordance with the statute fixed his punishment at death.

In addition, Self was tried and convicted on four counts of first-degree robbery, KRS 515.020(1)(b), and given 20 years' imprisonment; first degree assault, KRS 508.-010(1)(b), and given 20 years' imprisonment; and criminal attempt, KRS 506.010, and given 20 years' imprisonment. Self was not sentenced on these convictions.

Self asserts the unconstitutionality of the 1974 statute providing for a mandatory death penalty.

This assertion has been answered and disposed of in *Boyd v. Commonwealth*, Ky., 550 S.W.2d 507, decided this day.

We have determined the 1974 mandatory death penalty statute to be unconstitutional in *Boyd* by virtue of the decisions of the Supreme Court of the United States cited therein. We hold that the punishment to be imposed on Self for the conviction of murder is the maximum constitutionally permissible under the 1974 Penal Code, life imprisonment. This disposition answers Self's arguments with regard to the death penalty and assignment of error in closing argument.

The sole remaining assertion of error is that Self's right to effective assistance of counsel was violated by the trial court.

The evidence developed at the trial shows that Self and Beverley Headley, a codefendant, entered the Bachelor II Cocktail Lounge in Paducah, Kentucky. After shooting pool for a while with Ronnie Mor-

ris, Headley left the premises. Shortly thereafter, according to the other persons present, there was a shot near the pool table, Morris was seen lying on the floor, Self was waiving a pistol and stated "this is a robbery." Self pointed the pistol at Herman Bentley, the bartender, Brenda McDonald and Richard Flowers, patrons of the bar, and ordered them to approach the pool table. Self ordered them to persuade Morris to get to his feet. They did so and when Morris, wounded, reached his feet, Self said in substance, "Now watch me kill this Nigger," and fired again at Morris, killing him. He then proceeded to rob Bentley, McDonald and Flowers and took money from the cash register. Bentley informed Self there were no guns on the premises; and when Self found a .45 caliber revolver under the bar, he placed the muzzle of the gun under Bentley's chin and attempted to pull the trigger. The gun did not fire. Then Self discovered a safe next to the bar. He ordered Bentley to open it. When Bentley denied he knew the combination, Self stabbed Bentley in the abdomen with a knife. During this episode, N. T. Younger came to the door. Self led Younger in, identified himself and robbed Younger.

Self then left the premises, and he and Headley were later captured in Missouri. The authorities recovered the stolen money, watches and rings.

Self made a statement to the Missouri authorities that the shooting was in self-defense and that Bentley offered him the money from the cash register. Self did not testify at the trial.

Self's trial counsel, a public defender, also represented Headley. On the day of the trial, Self objected to his trial counsel representing him and asked for other counsel. It appeared that Headley, after a visit in jail by the Commonwealth's attorney and a detective, agreed to enter a guilty plea to the charges on the promise to receive less than a life sentence in return for testifying for the Commonwealth. At first Self thought his trial counsel was present at the meeting with Headley and stated he and Headley had been "sold out." The Commonwealth's attorney had invited Self's counsel to the meeting, but he declined to attend. Self appeared to suggest to the trial court at the in-chambers hearing that his trial lawyer should have prevented Headley from agreeing to testify and in not so doing created a conflict at the trial and failed to properly represent either Self or Headley or both of them. The trial court declined to grant a continuance.

Headley was not present in the Bachelor II premises when the incidents occurred. She testified to the details of herself and Self travelling from Illinois to Paducah and entering the Bachelor II premises. She testified she left the premises on instructions from Self, that he stated he was going to "rob the place." She testified about waiting in the car, the get away and pursuit leading up to the capture. We cannot see Headley's testimony as adding to the strength of the *Commonwealth's* case. Self, in his argument for other counsel, asserted Headley was not guilty of any crime. He argues that Headley's testimony as to his stated intention to rob had great significance, showing premeditation.

We are of the opinion Self was not denied effective assistance of counsel. The evidence of guilt was clear, convincing and overwhelming. In view of the other evidence for the Commonwealth, Headley's testimony was innocuous. Even had it been otherwise, there is nothing in the record to show a conflict of interest on the part of Self's trial counsel or that he failed in any respect in his duty to afford Self competent representation.

The judgment is reversed insofar as it imposes the death penalty upon Self with directions that Self be sentenced to a term of life imprisonment. In all other respects, the judgment is affirmed. Further, this cause is remanded to the trial court for sentencing on the three convictions for which sentence was not pronounced.