Ronnie MEADOWS, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

Supreme Court of Kentucky.

March 11, 1977.

Rehearing Denied June 10, 1977.

See Ky., 550 S.W.2d 509.

Jack Emory Farley, Public Defender, Frankfort, J. Vincent Aprile, Anna H. Isaacs, Asst. Public Defenders, for appellant.

Robert F. Stephens, Atty. Gen., Patrick B. Kimberlin, III, Asst. Atty. Gen., Frankfort, for appellee.

PALMORE, Justice.

Ronnie Meadows appeals from a judgment sentencing him to death pursuant to a verdict finding him guilty of intentional murder committed in the course of 1st-degree burglary. KRS 507.020(2)(b). In view of *Boyd v. Commonwealth*, Ky., 507 S.W.2d 550 (decided today), the judgment must be reversed insofar as it imposes the death penalty. Otherwise, however, we find no prejudicial error.

On May 23, 1975, Meadows was placed on parole from a four-year sentence being served at the Kentucky State Penitentiary for breaking and entering. He was given a bus-ticket to Cincinnati, Ohio, where a job had been procured for him. Instead of using the ticket, he exchanged it for cash in Paducah, procured a shotgun, shotgun shells and some other items from the home of a friend, stole a truck and abandoned it when it developed mechanical trouble, and then stole another truck. The second stolen vehicle also quit running at about 5:15 A.M. on May 25, 1975, near the home of Charles Grief and his wife, Mary Eloise, situated in a rural area near Paducah. Meadows saw a light come on in the kitchen of the Grief house and, according to his own testimony, decided to go up and see if could get a car and some money. He was carrying the loaded shotgun and a lunchbox with some clothes in it. He says he went to the door and rang the bell and that when Mrs. Grief appeared he asked if he could make a telephone call. Mrs. Grief let him in, but then for some reason unknown to him she threw her hands up to her mouth and screamed,

whereupon he "brought the gun up [and] it just went off . . . . I didn't shoot her on purpose. It was an accident. Accidental. I just brought the gun up and it went off." At this point Mrs. Grief's husband appeared in the hallway with a pistol in his hand and Meadows fled the scene, leaving the lunchbox and its contents, including his parole papers, behind. Mrs. Grief died from the gunshot wound.

Most of the alleged errors or irregularities on which Meadows relies for a reversal of his conviction were not timely raised in the trial court and thus were not preserved for review. Though in cases of capital punishment it has been a long-standing policy of this court to overlook procedural deficiencies, cf. *Bowman v. Commonwealth*, Ky., 290 S.W.2d 814, 817 (1956), this is no longer a capital case and that policy will not be applied. Hence we confine our discussion to the matters that are reviewable under conventional principles.

■ Some 20 prospective jurors were excused for cause when they expressed opposition to the death penalty. Each of them was first asked whether he had any conscientious scruple against imposition of the death penalty and then, after answering in the affirmative, was addressed as follows: "I take it by your answer that you could not find a death penalty in this or in any other case, regardless of the facts?" It was only after responding affirmatively to this inquiry that each of the prospective jurors was stricken.

*Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), held that the exclusion of prospective jurors solely on the ground of their having expressed general objections to or scruples against imposing the death penalty deprives a defendant of due process. Though counsel for Meadows recognizes that the voir dire in this case does not fall under the proscription of *Witherspoon*, he argues that whenever in any case the jurors have been qualified as not opposed to capital punishment they are likely to be more disposed to convict than would otherwise be so. That may be entirely true, but so far it is not unconstitutional. See *Witherspoon*, 391 U.S. at pp. 517, 518, 88 S.Ct. 1770.

■ In his closing argument to the jury counsel for Meadows concluded with the following statement:

"So, if you would think about the evidence when you get back into the jury room and apply it to the law which the Judge will give you and arrive at a fair and impartial judgment and give Ronnie Meadows, I think he deserves punishment, but give him what you think he deserves."

It is now contended that this statement amounted to a plea of guilty, destroying Meadows' defense of accidental shooting, and that because there had been no hearing to determine whether he had voluntarily and intelligently acquiesced in it the conviction must be set aside under the principle of *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). We think, however, that this particular approach to the jury by counsel, seeking more to save his client's life than his liberty, was not a plea, but a ploy. It entreated the jury to find Meadows not guilty of the most serious offense covered by instructions, even if the price of its so doing were to find him guilty under one of the other instructions. A lawyer's role in trying a case is much like that of a military commander on the field of battle. His decisions to advance, retreat or stand fast cannot always be plotted in advance or be laid before headquarters before taken. The action of trial counsel in this particular instance may have amounted to a tactical retreat, but certainly it did not surrender the cause. We therefore need not pass on the question whether the *Boykin* principle would apply to a de facto guilty plea made, for example, in the form of a lawyer's admitting his client's guilt and pitching his case on the mercy of the jury.

■ This last point leads into another contention that has become all too common in the appeals being presented by the Public Defender, which is that because trial counsel did or did not do this, that or the other

which he should or should not have done, according to the hindsight judgment of appellate counsel, the defendant was deprived of his Sixth Amendment right of counsel and, indeed, of his due process right to a fair trial. It is easy for brilliant young lawyers to flyspeck a trial record and pick out flaws in the manner in which it was practiced. It is even more simple if one has had no first-hand experience of his own in the pit. We have read the transcript of this trial and are not at all convinced that it was incompetently tried or that any of the alleged errors and irregularities, singly or in toto, resulted in an unfair trial. This was a mean, desperate case. In our opinion it is beyond any reasonable doubt whatever that even if it were practiced, and every trial action taken, as appellate counsel would have it, any impartial jury in the country would find Meadows guilty of murder just as this jury in McCracken County did. The outcome was just plainly inevitable, and the appellant is fortunate that by grace of the United States Supreme Court he escapes the electric chair.

One more comment and we are done. It is argued that the evidence warranted an instruction on the defense of intoxication under KRS 501.080. In *Jewell v. Commonwealth*, Ky., 549 S.W.2d 807 (decided today), it was held that in order to justify such an instruction there must be evidence not only that the defendant was drunk, but that he was so drunk that he did not know what he was doing. Meadows testified that he had consumed a large quantity of medicine and alcohol, but there was not a scintilla to suggest that he was not fully in possession of his faculties when he murdered Mrs. Grief. The only tangible effect the evidence of intoxication could have had was to reduce the offense from intentional homicide to wanton or reckless homicide, and that does not require an instruction.

In accordance with *Boyd*, cited in the first paragraph of this opinion, the judgment must be modified to reduce the sentence to life imprisonment. In all other respects it is affirmed.

The judgment is affirmed in part and reversed in part with directions that it be modified in accordance with this opinion.

All concur.