Joe Eddie HUDSON, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

Supreme Court of Kentucky.

April 1, 1980.

Thomas E. Clay, Louisville, Jack Emory Farley, Public Advocate, Kevin Michael McNally and M. Gail Robinson, Asst. Public Advocates, Frankfort, for appellant.

Robert F. Stephens, Atty. Gen., James L. Dickinson, K. Gail Leeco, Asst. Atty. Gen., Frankfort, for appellee.

LUKOWSKY, Justice.

On February 10, 1975 two armed men robbed Forton, a driver for Brinks Armored Car Service. During the robbery Forton was shot in the back of the head. He died as a result of his wound. Hudson was indicted for this crime in May, 1975 and arraigned in January, 1976. He was not tried until May, 1978, primarily because he escaped twice in the interim.

In March, 1977, this court was required by decisions of the Supreme Court of the United States to hold that the mandatory death penalty authorized by our 1974 murder statute could not be constitutionally imposed. The General Assembly was also aware of the constitutional infirmities of the 1974 death penalty statute. In 1976 it provided for its imposition by defining the discretion in application which is mandated by the decisions of the Supreme Court of the United States. In February, 1978 the Commonwealth decided to seek the death penalty for Hudson pursuant to the 1976 statute.

After hearing substantial eyewitnesses, accomplice and investigative testimony the trial jury found Hudson guilty of the robbery and murder of Forton. The jury then considered evidence of aggravating and mitigating circumstances and recommended a twenty-year sentence for robbery and the death penalty for murder. Hudson appeals.

■ The question presented is whether, *statutorily*, a death sentence pursuant to the 1976 statute may be imposed for a murder committed in 1975. We hold that it can not.

While *Boyd v. Commonwealth*, Ky., 550 S.W.2d 507 (1977) had not been decided on

the date of the Forton murder, that case stands for the proposition that the maximum constitutionally permissible penalty for murder in Kentucky in 1975 was life imprisonment. Nevertheless, the Commonwealth convinced the court at the 1978 trial to apply the 1976 statute to impose a sentence of death upon Hudson.

KRS 446.080(3) clearly and unequivocally states: "No statute shall be construed to be retroactive, unless expressly so declared." Nothing in the act of the legislature redefining the crime of murder and adopting the standards by which capital punishment may be considered and may be imposed even hints at retroactive application, much less *expressly declares* other than prospective application. 1976 Ky. Acts, Ch. 15, Secs. 1–4 (ex. sess.) The legislature has proclaimed that it will expressly indicate those instances in which an act is retrospective in nature. It has not done so here. Therefore, *statutorily*, the death penalty may only be imposed in those cases in which the crime was committed after the effective date of the revised death penalty statute. Not only is this result required by the statutory rule of construction, it is in accord with the common law of this Commonwealth, unchanged for over a hundred years. *Watts v. Commonwealth*, 78 Ky. (1 J. Rodman) 320 (1880); see *Long v. City of Louisville*, 97 Ky. 364, 30 S.W. 987 (1895); *O'Donoghue v. Akin*, 63 Ky. (2 Duv.) 478 (1866).

Four of our sister jurisdictions have squarely faced the issue presented by this case: Louisiana, California, Idaho and South Carolina. Louisiana, California and Idaho each considered retroactive application of the death penalty in the light of a statute requiring express declaration of retroactivity which was virtually identical to the Kentucky statute. *State v. Collins*, La., 370 So.2d 533 (1979); *People v. Teron*, 23 Cal.3d 103, 151 Cal.Rptr. 633, 588 P.2d 773 (1979); *State v. Lindquist*, 99 Idaho 766, 589 P.2d 101 (1979). South Carolina considered this issue, applying the same rule of construction as a matter of its common law. *State v. Rodgers*, 270 S.C. 285, 242 S.E.2d 215 (1978). Uniformly, these courts have held retroactive application of the death penalty to be impermissible under state law. Kentucky joins their ranks.

We hold as a matter of statutory construction that the death penalty sentence for a capital offense authorized by KRS 532.030(1) and KRS 532.035 and the method for its imposition provided by KRS 532.025 are applicable only to capital offenses committed after the effective date of those statutes, December 22, 1976. Insofar as the judgment of the Jefferson Circuit Court imposes the penalty of death as punishment for the murder conviction of Hudson, the judgment is reversed.

We are now faced with the question of a proper sentence for that conviction. Under the instruction given by the court below, the jury could have fixed Hudson's punishment for murder at death or life imprisonment or a term of years not less than twenty. The jury chose death. Clearly, the jury meant to impose the maximum constitutional punishment authorized by statute. The maximum legally permissible punishment for a murder committed in 1975 in Kentucky is life imprisonment. The punishment to be imposed upon Hudson for the murder of Forton is life imprisonment. *Boyd v. Commonwealth*, supra; *Self v. Commonwealth*, Ky., 550 S.W.2d 509 (1977); *Meadows v. Commonwealth*, Ky., 550 S.W.2d 511 (1977).

In a 122 page brief Hudson, through the Public Advocate, has attacked his conviction with twenty-eight assignments of error, most of which assert that Hudson was denied due process of law at his trial. We have completed the tedious process of evaluating each of these assignments of error and are satisfied that the decision of the issue discussed in this opinion moots many of them and that the balance are either without merit or harmless beyond a reasonable doubt. Therefore, the remainder of the judgment is affirmed.

The judgment of the Jefferson Circuit Court is affirmed in part and reversed in part and the cause is remanded to that

court with directions to sentence Hudson to life imprisonment for the murder of Forton.

All concur, except STEPHENS, J., who did not sit and CLAYTON, J., who dissents.

CLAYTON, Justice, dissenting.

I must, in good faith and conscience, dissent, in part, from the opinion held by the majority of the court in this case. I view *Dobbert v. Florida*, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977) as controlling this court's disposition of the sentencing issues as presented by the appellant.

In the present case, as in *Dobbert*, the criminal defendant was sentenced to death for a murder committed during a period in which an invalid death penalty statute was operating. The United States Supreme Court ultimately held, in *Dobbert*, that the unconstitutionality of the death penalty statute for reasons connected to its procedural administration did not deprive the defendant of a substantial right in violation of the ex post facto clause of the United States Constitution, Article 1, § 10. The parallels between *Dobbert* and this case are too close for me to find fault with the reasoning of the high court. As the Court stated:

" '[t]he inhibition upon the passage of ex post facto laws does not give a criminal a right to be tried, in all respects, by the law in force when the crime charged was committed' (citation omitted). '[T]he constitutional provision was intended to secure substantial personal rights against arbitrary and oppressive legislation (citation omitted) and not to limit the legislative control of remedies and modes of procedure which do not affect matters of substance.' "

*Dobbert, supra*, at 293, 97 S.Ct. at 2298. See also, *Hopt v. Utah*, 110 U.S. 574, 4 S.Ct. 202, 28 L.Ed. 262 (1884) and *Thompson v. Missouri*, 171 U.S. 380, 18 S.Ct. 922, 43 L.Ed. 204 (1898). For an incisive discussion on ex post facto law, see 53 L.Ed.2d 1146 (1978).

Furthermore, the following language, quoted by the Court in *Hopt, supra*, applies equally to Hudson, as it did to *Dobbert*:

"The crime for which the present defendant was indicted, the punishment prescribed therefor, and the quantity or the degree of proof necessary to establish his guilt, all remained unaffected by the subsequent statute."

*Dobbert, supra*, 432 U.S. at 294, 97 S.Ct. at 2299.

When, in *Dobbert*, the petitioner argued that his rights had been violated because at the time he committed the murders there was no valid death penalty "in effect," the Court countered with:

Whether or not the old statute would, in the future, withstand constitutional attack, it clearly indicated [the state's] view of the severity of murder and of the degree of punishment which the legislature wished to impose upon murderers. The statute was intended to provide maximum deterrence, and its existence . . . provided fair warning as to the degree of culpability which the State ascribed to the act of murder.

*Dobbert, supra*, at 297, 97 S.Ct. at 2300.

The appellant, Hudson, had more than sufficient notice at the time he committed and was indicted for the crimes, that murder, as defined in KRS § 507.020 was a capital offense, punishable by death. The fact that the statute prescribing impositions of the death penalty was subsequently held to be unconstitutional and eventually replaced with a statute conforming to constitutional standards is really nothing more than an alteration of the manner and form in which the death penalty is to be administered.

I would affirm the appellant's conviction and sentence as rendered by the Jefferson Circuit Court.