David BUCHANAN, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Supreme Court of Kentucky.

June 13, 1985.

C. Thomas Hectus, Gittleman & Barber, R. Allen Button, Appellate Public Advocate, Louisville, Mark A. Posnansky, Asst. Public Advocate, Frankfort, for appellant.

David L. Armstrong, Atty. Gen., David A. Smith, Asst. Atty. Gen., Frankfort, for appellee.

WINTERSHEIMER, Justice.

This appeal is from a judgment based on a jury verdict which convicted Buchanan of murder, robbery, rape and sodomy and sentenced him to life in prison.

The questions presented are whether the trial by a death-qualified jury where Buchanan did not face capital punishment violated due process by excluding a jury panel composed from a fair cross-section of the community, whether there was sufficient evidence to support the finding that Buchanan intended the victim's death, whether there is sufficient evidence to support a finding that he was not acting under extreme emotional disturbance at the time of the murder, whether the trial judge properly allowed the prosecution to introduce evidence of the competency evaluation, and whether the evidence of competency did violate his privilege against self-incrimination.

Barbel Poore was raped, sodomized and murdered in connection with the robbery of a gas station in Louisville on January 7, 1981. She, a 20-year-old service station attendant, was shot twice in the head. Kevin Stanford was convicted as the trigger man. Buchanan accompanied Stanford and was also convicted of murder. Both Stanford and Buchanan were tried together. Stanford was sentenced to death, but Buchanan received a life sentence. This appeal followed.

This Court affirms the judgment of the circuit court.

■ In a joint trial for capital murder where the death penalty is sought against one defendant, but not the other, the impaneling of a death-qualified jury does not deprive the defendant of the right to a trial by a fair and impartial jury selected from a fair cross-section of the community.

Buchanan's pretrial motion to preclude death-qualification of the jury or to postpone such *voir dire* until the penalty phase of the trial was overruled. The jury was death-qualified individually by the trial judge prior to the guilt phase of the trial. We find no merit in the argument that such a process necessarily resulted in an extraordinarily conviction-prone jury or that it excluded a recognizable group from the jury panel so as to make the panel unrepre-

sentative of a fair cross-section of the community.

We are not persuaded by the authority of *Grigsby v. Mabry*, 483 F.Supp. 1372 (E.D. Ark., 1980). Buchanan's arguments have been consistently rejected in other jurisdictions, *see Spinkellink v. Wainwright*, 578 F.2d 582 (5th Cir.1978); *United States ex rel. Clark v. Fike*, 538 F.2d 750 (7th Cir. 1976); *Craig v. Wyse*, 373 F.Supp. 1008 (D.D.C.1974); *Martin v. Blackburn*, 521 F.Supp. 685 (E.D.La.1981); *State v. Hyman*, 276 S.C. 559, 281 S.E.2d 209 (1981); *People v. Lewis*, 88 Ill. 2d 129, 58 Ill.Dec. 895, 430 N.E.2d 1346 (1981); *State v. Ortiz*, 88 N.M.2d 370, 540 P.2d 850 (1975); *Hovey v. Superior Court of Alameda County*, 28 Cal.3d 1, 168 Cal.Rptr. 128, 616 P.2d 1301 (1980).

*People v. Kirkpatrick*, 70 Ill.App.3d 166, 26 Ill.Dec. 356, 387 N.E.2d 1284 (1979) noted that no reviewing court has found any valid data indicating that a death-qualified jury is conviction prone. A death-qualified panel tends to ensure those who serve on the jury to be willing and able to follow the evidence and law rather than their own preconceived attitudes. Such a process furthers the interests of both the defendant and prosecution in presenting the case to an impartial jury. *See Gall v. Commonwealth*, Ky., 607 S.W.2d 97 (1980); *Meyer v. Commonwealth*, Ky., 472 S.W.2d 479 (1971).

Buchanan's contention that death qualification excludes a cognizable group from the jury panel so as to make it unrepresentative of a fair cross-section of the community is also unconvincing. Persons who are unalterably opposed to capital punishment do not constitute a cognizable group for the purpose of the fair cross-section requirement. Such persons have diverse attitudes which defy classifications and have not been singled out by the public for special treatment. They do not meet the criteria for making a cognizable class. *United States v. Kleifgen*, 557 F.2d 1293 (9th Cir. 1977); *Brown v. Harris*, 666 F.2d 782 (2nd Cir.1981). Opponents of capital punishment are not a distinct opinion-shaped

group. *See State v. Taylor*, 304 N.C. 249, 283 S.E.2d 761 (1981). It was not reversible error to death-qualify the jury.

■ There is sufficient evidence in the record to support the jury finding that Buchanan intended the death of the victim.

There was testimony from Troy Johnson that Buchanan believed the robbery of the station would be easy because the victim was alone, but nonetheless supplied the bullets for the previously unloaded gun. Johnson also testified that Buchanan borrowed his brother's gun and bullets for use in the robbery, and that he did not believe Buchanan's assurances that the victim would not be harmed. Johnson had agreed to participate in the robbery until Buchanan acquired ammunition for the weapon and then Johnson refused to leave the car.

Buchanan planned the robbery; he acquired the murder weapon and the ammunition. He enlisted the assistance of Stanford and instructed Johnson throughout the affair to remain in his car and to follow the victim's car. Buchanan had the same motive as Stanford for permanently silencing the victim. He knew that the victim could identify Stanford which meant that he would also ultimately be found. Considering the evidence as a whole, a reasonable jury could conclude that Buchanan intended the victim's death. *Trowel v. Commonwealth*, Ky., 550 S.W.2d 530 (1977).

■ There is sufficient evidence to support the finding by the jury that Buchanan was not acting under extreme emotional disturbance at the time of murder. There is nothing in the record to support the argument that the murder was precipitated by extreme emotional disturbance. The entire sequence of events indicated a cold and calculating premeditated act by Buchanan. He sought the assistance of Stanford and Johnson, obtained a gun and bullets, and timed the robbery so that the victim would be closing the station and probably alone. Certainly this was not an unplanned event. *See Brown v. Commonwealth*, Ky., 555 S.W.2d 252 (1977); *Gall v. Commonwealth, supra*.

The introduction by Buchanan of three Department of Human Resources reports is not evidence of extreme emotional disturbance. *See Wellman v. Commonwealth*, Ky., (Rendered June 13, 1985). Evidence of a mental defect alone does not support a defense of extreme emotional disturbance. *Wellman, supra.* There was sufficient evidence for a jury to find otherwise. There was a letter from DHR to Judge Snydor which noted Buchanan had benefited from treatment. The prosecution also introduced a Danville DHR report indicating that Buchanan was sophisticated, manipulative and cunning. There was also evidence of Buchanan's August 17, 1981 competency report which indicated that he was functioning normally.

The trial judge properly allowed the prosecution to introduce evidence of Buchanan's competency evaluation.

Buchanan introduced evidence of three DHR reports relating to his mental condition which had been prepared for use by juvenile authorities several months before the crimes herein. The report which Buchanan contests was cumulative to the DHR letter and report which already had been introduced into evidence. Buchanan opened the door for the introduction of the competency report by introducing only those DHR reports which were beneficial to him. The fact that the report was made for the purpose of determining his competency to stand trial did not render the objective observations contained therein inadmissible. There is nothing to indicate that Dr. Ryan, the author of the competency report, was any less qualified than the psychologist who prepared the other DHR reports. The evidence of the competency report was nonprejudicial and harmless beyond a reasonable doubt in view of the considerable evidence that the murder was well planned and premeditated. The evidence of the competency report did not affect the ultimate outcome of the trial. *Stiles v. Commonwealth*, Ky.App., 570 S.W.2d 645 (1978).

The evidence of Buchanan's competency report did not violate his privilege against self-incrimination. *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), is distinguishable from this case. In *Smith, supra,* the defendant was incriminated by his remarks to the examiner. In this case, the report contained no inculpatory statements by Buchanan or any accusatory observation by the examiner who merely recited his observations of Buchanan's outward appearance.

When Dr. Ryan examined Buchanan, he had waived his right to silence by giving the police a confession. *Parrish v. Commonwealth*, Ky., 581 S.W.2d 560 (1979). Any error in admitting the competency report was nonprejudicial and harmless beyond a reasonable doubt in view of the confession and the overwhelming evidence of guilt. *Stiles, supra.*

The judgment is affirmed.

All concur, except for LEIBSON, J., who did not sit.