Beoria A. SIMMONS, Jr., Appellant,

v.

COMMONWEALTH of
Kentucky, Appellee.

No. 85–SC–629–MR.

Supreme Court of Kentucky.

Jan. 21, 1988.

As Modified on Denial of Rehearing
March 31, 1988.

Daniel T. Taylor III, Robert D. Schadd, Louisville, M. Gail Robinson, Asst. Public Advocate, Frankfort, for appellant.

Mary–James Young, Virgil W. Webb III, Asst. Attys. Gen., Frankfort, for appellee.

## OPINION OF THE COURT

Beoria A. Simmons, Jr. was convicted of three murders, three rapes, one attempted murder, one attempted rape, and four kidnappings. He was sentenced to death for each of the three murders, to death for three of the kidnappings, 20 years' imprisonment for the attempted murder, 10 years' imprisonment for attempted rape, and 20 years' imprisonment for the other kidnapping charge. All of the charges arose from assaults perpetrated upon four women in Louisville, Kentucky.

Sixteen-year-old K.D. Heaton was accosted by appellant at gunpoint as she stood waiting for a bus. He took her in his automobile to Iroquois Park in Louisville and attempted to rape her. She had a knife in her possession and slashed appellant repeatedly and made her escape. The attempted rape was reported to the police.

Meanwhile, the appellant had sought medical assistance at a hospital, where he claimed to have been injured by people who robbed him. The police, however, suspected a connection between the stab wounds suffered by appellant and the stabbing of an assailant which was reported by Ms. Heaton.

Appellant's pistol was recovered from his automobile, and ballistic tests showed that this weapon had been used in three earlier murders. The appellant gave a statement in which he admitted having sexual intercourse with the three other women and that he killed each of them. He also permitted his statement of his involvement in these crimes to be tape recorded.

In each of the three murders committed on separate occasions prior to the assault on Ms. Heaton, the appellant stated that he picked up the victims on the street, that they rode around in his car for a while, and later engaged in consentual sexual relations, after which each of the women demanded money. In the ensuing argument about money, he shot each of the three victims, causing their death, and he left the bodies of two of them in a city park and the other was left lying where she was shot, in the vicinity of River Road in Louisville.

Appellant has a Bachelor's Degree in social work, and at the time of his arrest was employed as a counselor at a halfway house for parolees.

Appellant has asserted 34 grounds for reversal of his conviction in his brief and addressed some of those issues at oral argument. This opinion will focus on all of the issues addressed by appellant's counsel at oral argument plus others presented in the brief which, in the opinion of this court, merit discussion. Allegations of errors which we consider to be patently without merit will not be addressed herein.

## FUNDS FOR EXPERT WITNESSES

Appellant first contends that he was denied due process of law when the trial court overruled his motions to advance funds for psychological and psychiatric examination and assistance. Appellant requested that funds be provided for the appointment of two independent psychiatrists, two independent psychologists, and one licensed clinical social worker to examine him.

An indigent defendant is entitled to reasonably necessary expert assistance. *Young v. Commonwealth*, Ky., 585 S.W.2d 378 (1979); K.R.S. 31.110. K.R.S. 31.185 provides that an indigent defendant is entitled to use state facilities for the evaluation of evidence. On a joint motion the appellant was transferred to the Kentucky Correctional Psychiatric Center for evaluation. He was examined there by a Dr. Ravani, a psychiatrist, and consulted with a social worker, Cheryl Stuckey.

Dr. Ravani reported to the court that appellant was competent to stand trial. Both Dr. Ravani and Cheryl Stuckey testified in behalf of appellant: Dr. Ravani at the guilt phase of the trial and Cheryl Stuckey at both the guilt and the sentencing phase. Although he was employed by the state, Dr. Ravani testified that he was not employed by the prosecution and that his only job was to give an independent answer concerning the mental status of the persons examined by him. He also stated that in a majority of cases referred to him, his report showed some degree of mental deficiency.

The appellant failed to show a necessity for the expert assistance he requested. He stated in general terms only that expert assistance was needed to prepare adequately for trial and possible sentence hearing. He did not state the names of any doctor or social worker that he desired to examine him, nor did he furnish any estimate of the cost. He further did not state what he expected to show or in what manner the requested assistance would be of any specific benefit to him. He made no challenge to the competency of Dr. Ravani or that Dr. Ravani was uncooperative with him or was not available for consultation.

The only objection that he made to the examination by Dr. Ravani pursuant to the court order, was that the information given to Dr. Ravani would not be treated with confidentiality, but, nevertheless, he used Dr. Ravani as a witness in his behalf. The Commonwealth presented no psychiatric evidence in support of any aggravating factor in these capital murder cases. *See, Bowden v. Kemp*, 767 F.2d 761 (11th Cir. 1985).

The trial courts are not required to provide funds to defense experts for fishing expeditions. *Hicks v. Commonwealth*, Ky., 670 S.W.2d 837, 838 (1984). There is no violation of due process in the refusal to provide for expert witnesses where the defendant offers little more than an undeveloped assertion that the requested assistance would be beneficial. *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985).

We hold that appellant was provided competent expert psychiatric and social worker assistance, which he utilized in his trial, and that he failed to establish that further expert assistance was reasonably necessary for his defense.

## JURY SELECTION

The appellant has postulated numerous alleged errors in the jury selection process. He contends that some jurors were improperly excused for cause when they expressed reservation about their ability to vote for the death penalty and that others were not excused for cause upon challenge by appellant when they indicated that they were prone toward the death penalty and could not consider the full range of punishment provided by law.

■ The determination of whether to exclude a juror for cause lies within the sound discretion of the trial court. We do not reverse the action of the trial court in the exercise of its discretion unless the exercise of discretion is clearly erroneous. *Caldwell v. Commonwealth*, Ky., 634 S.W.2d 405, 407 (1982).

■ We have read the entire transcript of the voir dire of the prospective panel members of whom appellant makes complaint. In the case of the jurors excused for cause by reason of their feelings about the death penalty, their testimony was such as to convince any reasonable person that they could not, under any circumstances, in any case whatever, vote to impose the death penalty. Because of this they would be prevented or substantially impaired in their ability to perform their duties as jurors, and it was not an abuse of discretion to strike them for cause. *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed. 2d 841 (1985).

■ Likewise, some of the jurors indicated their belief in the death penalty in a proper case, but a review of the entire voir dire does not reveal that any would inevitably impose the death penalty in every case nor that they could not consider the entire range of penalties established by law. The failure of the trial court to discharge those

jurors for cause was not an abuse of discretion.

One juror, during voir dire, indicated that, if justified, he could impose the death penalty. Some time later during the jury selection process this juror appeared before the judge and stated that upon reflection he believed in the death penalty but did not believe that he could impose it in any case. The court then asked the juror if he would be unable, under any circumstance, to impose the death penalty, and the juror replied that he thought he could not. This juror was excused for cause, and we find no abuse of discretion in the trial court's action.

Another juror, during preliminary voir dire questioning by the court, answered affirmatively that he could not, under any circumstance, consider imposing the death penalty. This juror was excused for cause. The appellant objected because he was not afforded an opportunity to rehabilitate the juror. The examination of jurors by counsel is a privilege, not a right. RCr 9.38. The juror's response to questions of the trial judge was unequivocal, and we see no abuse of discretion on the part of the trial court.

■ Appellant contends that one prospective juror should have been discharged for cause for the reason that she was biased against the defense of insanity or mental illness. This juror's response to voir dire questions showed her to be a mature and intelligent person who believed that insane persons are not responsible for their acts and that mental illness should be considered in mitigation of punishment. Although she expressed a personal feeling that insanity should not be a complete defense to crime, she did not state that she would be unable to follow the law and the instructions of the court, or that she could not in this or any other case be able to return a verdict of not guilty by reason of insanity. We find no error in the refusal to discharge this juror for cause.

Finally, appellant alleges that it was un-Democratic and un-American to excuse jurors for cause when they could not, in any case, under any circumstance, vote to im-

pose the death penalty. The procedure used in this trial has been approved by our court in *Buchanan v. Commonwealth,* Ky., 691 S.W.2d 210 (1985) and by the United States Supreme Court in *Lockhart v. McCree,* 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986).

## ALLEGED DISCRIMINATION IN THE USE OF PEREMPTORY CHALLENGES

■ The Commonwealth's Attorney exercised five of his peremptory challenges to excuse five of the seven black prospective jurors. The appellant excused one of the black prospective jurors, and one black person remained on the jury panel.

After the peremptories were exercised, 14 prospective jurors remained to provide a jury of 12 with 2 alternates. The following colloquy then took place:

"THE COURT: Is the Commonwealth satisfied with the jury?

"MR. DUNCAN: Yes, Your Honor.

"THE COURT: Is the Defendant satisfied with the jury?

"MR. TAYLOR: Yes, Your Honor.

"THE COURT: Would you please swear the jury?

"JUROR JOHNSON: May I approach the bench?

"THE COURT: Yes, sir.

(Discussion at the bench in whispered tones.)

"JUROR JOHNSON: If possible my company would prefer that I didn't, if the trial lasted a long time, didn't serve.

"THE COURT: Well, I appreciate what your company would prefer, but at this point it is beyond my capability.

"JUROR JOHNSON: Okay.

"THE COURT: All right, sir.

(Continuing in Open Court)

(Jury sworn to try the case.)

"THE COURT: Those other members of the panel that were not selected to serve as a jury in this matter, I want to thank you for your assistance. Without your assistance we would not have been able to pick a jury. I know it's been a somewhat trying experience for you and I appreciate the patience that you've shown throughout the process of jury selection.

"Again, I thank you on behalf of the court system for your assistance in helping us select a jury for this case. At this time you're excused from this court.

(Prospective jurors not seated left the courtroom.)

"THE COURT: Mr. Duncan, would you come up, please, sir?

"MR. DUNCAN: Yes.

(Discussion at the bench in whispered tones.)

"MR. TAYLOR: At this time I want to object to the pre-empties (sic) as exercised by the Commonwealth on the basis of racial exclusion, my client being a black person and the margin of blacks pre-emptorily (sic) struck by the Commonwealth, and move the Court to mistry the case and reassign for trial.

"THE COURT: Motion is denied."

We note that appellant's objection to the use of peremptory challenges to jurors was not made until after the appellant had accepted the jury, and stated to the court that he was satisfied with the jury. It was not made until after the prospective jurors who were not accepted on the panel had been discharged from service by the court and had left the courtroom. The objection was not made until after the jury had been sworn.

The relief requested was not that the alleged discriminatory challenges be disallowed, but rather a mistrial was sought with a reassignment for trial.

*Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), requires that upon *timely* objection to peremptory challenges for alleged discrimination, the court shall hold a hearing to determine if a prima facie case of discrimination can be made. *Batson* also noted, at footnote 24, that it made no attempt in the light of the variety of jury selection procedures in various states to outline the procedure to be followed to implement the decision.

In Kentucky, after challenges for cause, each party having the right to exercise

peremptory challenges is furnished a list of qualified jurors equal in number to the number of jurors to be seated plus the number of the allowable peremptory challenges for all parties. Peremptory challenges are then exercised simultaneously by each party by striking names from the list and returning it to the judge. The jury is then chosen from the names that remain. RCr 9.36(2).

There is nothing to prevent a party from seeing the list of strikes of the opposing party after the strikes have been made and the list returned to the judge. If there is a challenge to be made to the exercise of peremptories in this state, it should be made when the list of strikes has been returned to the judge and before the jury has been accepted by the parties and sworn to try the case and before the remainder of the jurors have been discharged from service.

In this càse the voir dire questioning of jurors consumed four days and is transcribed in nine volumes in the transcript on appeal. If appellant had made a timely challenge to the exercise of peremptories by the Commonwealth, the trial court could have held a hearing to determine if a prima facie case of discrimination existed, and if so, the steps set forth in *Batson v. Kentucky, supra,* could have been complied with without delay. If it were determined that the challenge of any juror was the result of discrimination, that challenge could have been disallowed and that juror would have remained on the panel.

As it happened, no objection was made here until after appellant had stated his satisfaction with the jury, the remaining jurors were discharged and had left the courtroom, and the jury was sworn to try the case. The only relief sought was a mistrial and a continuance of the case. We do not think the Commonwealth should be subjected to such delay and additional expenses as would be caused by a new trial when the appellant could have avoided the situation entirely by making a timely motion.

*Batson v. Kentucky, supra,* envisions that a timely motion should be made for

protection under its ruling, and it has been so held in *United States v. Erwin,* 793 F.2d 656 (5th Cir.1986) and *Swain v. State,* 504 So.2d 347 (Ala.Crim.App.1986).

## AGGRAVATING CIRCUMSTANCES

■ K.R.S. 532.025(3) provides that the death penalty shall not be imposed unless the jury shall find at least one of the statutory aggravating circumstances. Only one such aggravating circumstance must be shown beyond a reasonable doubt to sustain a death sentence. *Bevins v. Commonwealth,* Ky., 712 S.W.2d 932 (1986); *Zant v. Stephens,* 456 U.S. 410, 102 S.Ct. 1856, 72 L.Ed.2d 222 (1982). The jury found as aggravating circumstances in each of the three capital murders: (a) that at the time of the homicide the appellant was engaged in the commission of first-degree rape upon the victim, and (b) appellant's act or acts of killing were intentional and resulted in multiple deaths.

■ In each of the three kidnapping cases in which the death penalty was imposed, the jury found as an aggravating circumstance that the appellant committed rape in the first degree upon the victim.

K.R.S. 532.025 lists the following statutory aggravating circumstances:

"(a)(2) The offense of murder or kidnapping was committed while the offender was engaged in the commission of ... rape in the first degree.

. . . .

"(a)(6) The offender's act or acts of killing were intentional and resulted in multiple deaths."

Appellant contends that the statutory term "multiple deaths" must be construed to mean more than one death that occurs simultaneously, or in the alternative, that the statute is void for vagueness. It is obvious that the legislature did not use the words "simultaneous deaths" in the statute. The appellant solicits us to add those words in construing the intent of the General Assembly.

Ordinarily we construe statutes in the light of the plain meaning of the words contained therein, and resort to legislative

intent only when words used in the statute are ambiguous. We see no ambiguity here. The statute refers to an act or acts which result in multiple deaths. Multiple means more than one, and it is beyond dispute that the acts of appellant resulted in more than one death.

Aggravating factors are those factors which would serve to enhance punishment to a higher degree. With respect to the vicious propensities of a defendant which are indicative of his danger to society, it is certainly no less compelling that on three different occasions he had committed a murder than if he had killed three people at one time. We interpret the act or acts of killing which result in multiple deaths to mean the deaths of more than one person, whether simultaneously or not.

 The statute is not vague in its intent, and we believe that citizens who desire to obey it will have no difficulty in understanding it. *Colten v. Commonwealth*, Ky., 467 S.W.2d 374 (1971); affirmed, *Colten v. Kentucky*, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972).

 The appellant also contends that there was no evidence whatever that any of the deceased women were raped by appellant and that rape could not suffice as an aggravating circumstance in either the murder or the kidnapping convictions.

In his statements to the police and in his recorded statement, appellant admitted having sexual intercourse with the three victims. He contended in each case that the intercourse was with consent of the victim. The question presented is whether there was other evidence from which the jury could conclude that appellant accomplished the sexual intercourse by the use of forcible compulsion.

In each case, the victim is dead and could not testify, but the jury was entitled to consider all other circumstances in evidence which would indicate the use of force upon the victim.

First, the jury knew that Ms. Heaton, the victim who escaped with her life, was abducted from the street and compulsively forced at gunpoint to get into appellant's car, was beaten about the head as they drove to Iroquois Park, that appellant stated to her that he wanted to have sexual intercourse, that he forced her from the car and dragged her into the park where she fought him and finally escaped after stabbing him repeatedly.

Ms. Heaton explicity testified about the force used upon her and the appellant's attempt to rape her. The bodies of the other three victims were found in secluded places, two of them in a park, and had multiple bruises upon their persons which indicated the use of force upon them and from which a jury could infer a struggle or resistance on their part. The fact that some of their undergarments were torn and scattered about the scene of the murder was inconsistent with voluntary intercourse. The other three victims were killed with the same pistol with which appellant abducted Ms. Heaton and attempted to rape her.

There was sufficient similarity and pattern in all four crimes to show the motive and intent of the appellant and to permit the jury to conclude beyond a reasonable doubt that the sexual intercourse between appellant and the victims was not consentual but was the result of forcible compulsion.

The rape of the victims was properly considered as an aggravating factor in both the kidnapping and the murder convictions.

## SUPPRESSION OF EVIDENCE

 The appellant contends that the trial court erred by refusing to suppress statements made by him when he was questioned by police officers at the hospital and by refusing to suppress evidence obtained through a search of appellant's premises and his automobile.

The basis of the motion was that his statements and his consent to a search were not voluntarily given. The trial court held a suppression hearing, and testimony showed conclusively that appellant was admitted to the hospital with several superficial cuts which were cleansed and sutured. The cuts were not thought to be serious,

but appellant was kept in the hospital 24 hours for observation and then was released.

The hospital notified the police that a person with stab wounds had been admitted, and a police officer went to the hospital to investigate. At that time the appellant was not suspected of any crime but was regarded as a victim. He told the investigator that he had been stabbed by people who attempted to rob him.

Later, this same officer investigated a reported attempted rape and discovered that the victim had escaped by stabbing her assailant numerous times. Appellant immediately became a suspect in the attempted rape. The police officers returned to the hospital, and after reading to appellant his constitutional rights, questioned him further. According to the treating physician, the appellant was alert and in control of his faculties, and his cuts were only superficial. To the officers he appeared to be alert and to understand the nature of their visit. He told the officers that his gun was in his automobile and signed his consent for the search of the automobile.

The weapon recovered from appellant's automobile proved to be the weapon used in three other unsolved murders. Appellant was further questioned and admitted his involvement in those cases.

Appellant's reliance upon *Mincey v. Arizona*, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978) is entirely misplaced. In *Mincey* the suspect was questioned in a hospital while suffering from a gunshot wound, with tubes inserted in his nose and throat and a catheter into his bladder, and while he was in great pain. He continuously asked that questioning cease until he could consult a lawyer; he complained that he was confused and could not think straight, and his questioning was interrupted occasionally when he would lapse into periods of unconsciousness. In those circumstances the Supreme Court held that his statements were not voluntarily given. The circumstances in this case, unlike those in *Mincey,* do not indicate in any way that the statements given to the officers by appellant were involuntary. He was not

suffering from any substantial injury; he was alert and understood what was happening; he was advised of his constitutional rights on each occasion before questioning commenced, and he willingly and freely gave his statement to the police.

We have reviewed all of the errors alleged by appellant and find them to be without merit.

■ Pursuant to the mandate of K.R.S. 532.075 we have reviewed the entire record of this case and have determined that the sentence of death was not imposed under the influence of passion, prejudice, or any other arbitrary factor and that the evidence supported the jury's finding of the statutory aggravating factors enunciated in this opinion. We have compared the sentence in this case with other cases in which the death penalty has been imposed and which we have affirmed since 1970. Those cases are:

*Scott v. Commonwealth,* Ky., 495 S.W. 2d 800 (1973)

*Leigh v. Commonwealth,* Ky., 481 S.W. 2d 75 (1972)

*Lenston and Scott v. Commonwealth,* Ky., 497 S.W.2d 561 (1973)

*Call v. Commonwealth,* Ky., 482 S.W.2d 770 (1972)

*Caldwell v. Commonwealth,* Ky., 503 S.W.2d 485 (1972)

*Tinsley and Tinsley v. Commonwealth,* Ky., 495 S.W.2d 776 (1973)

*Galbreath v. Commonwealth,* Ky., 492 S.W.2d 882 (1973)

*Caine and McIntosh v. Commonwealth,* Ky., 491 S.W.2d 824 (1973)

*Hudson v. Commonwealth,* Ky., 597 S.W.2d 610 (1980)

*Meadows v. Commonwealth,* Ky., 550 S.W.2d 511 (1977)

*Self v. Commonwealth,* Ky., 550 S.W.2d 509 (1977)

*Boyd v. Commonwealth,* Ky., 550 S.W. 2d 507 (1977)

*Gall v. Commonwealth,* Ky., 607 S.W.2d 97 (1980)

*McQueen v. Commonwealth,* Ky., 669 S.W.2d 519 (1984)

*White v. Commonwealth,* Ky., 671 S.W. 2d 241 (1984)

*Harper v. Commonwealth,* Ky., 694 S.W.2d 665 (1985)

*Skaggs v. Commonwealth,* Ky., 694 S.W. 2d 672 (1985)

*Kordenbrock v. Commonwealth,* Ky., 700 S.W.2d 384 (1985)

*Matthews v. Commonwealth,* Ky., 709 S.W.2d 414 (1986)

*Marlowe v. Commonwealth,* Ky., 709 S.W.2d 424 (1986)

*Bevins v. Commonwealth,* Ky., 712 S.W. 2d 932 (1986)

*Halvorsen and Willoughby v. Commonwealth,* Ky., 730 S.W.2d 921 (1986)

*Smith v. Commonwealth,* Ky., 734 S.W. 2d 437 (1987)

*Stanford v. Commonwealth,* Ky., 734 S.W.2d 781 (1987)

We find the death penalty imposed herein is not excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. The judgment is affirmed.

All sitting. All concur.

LEIBSON, J., concurs by separate opinion.

LEIBSON, Justice, concurring.

I concur in the Majority Opinion.

Further, in my opinion there is no basis here for speculation that the Commonwealth might have been attempting to exercise peremptory challenges in a racially discriminatory manner. The Commonwealth did not strike all of the black jurors. Two were left on by the Commonwealth, and one served.

The worst danger from an all white jury is the potential for race being injected into the discussion in the jury room. The Commonwealth's exercise of peremptory challenges did not create a situation where this type of wrongdoing could occur.

In these circumstances there is no reason to suspect that the Commonwealth was seeking to exercise peremptory challenges in a racially discriminatory manner or that failure to utilize the *Batson* procedure prejudiced the defendant.